## GEORGE MAURY v. THE STATE.

1. HOMICIDE. *Malice. Resisting unlawful attack. Evidence.*

    Twelve men armed with guns and pistols rode at night to the home and into the yard of defendant, by whom one of them had been beaten in a fight a few days before. They called for him, and in searching the premises broke open the smoke-house. Some one in or near a cotton-house cried "here he is," and a movement being made towards it, defendant with several friends, from their hiding place in the cotton-house, opened fire on the party, killing two. The purpose of the visit was afterwards avowed to be his arrest, but no charge had been made or warrant procured. *Held,* malice cannot be predicated upon such facts, and a conviction of defendant for murder will be reversed.

2. SAME. *Instruction: not applicable.*

    The evidence not having disclosed that defendant had committed a felony, an instruction announcing the right of a private person to arrest a felon, with or without a warrant, was inapplicable and therefore erroneous.

3. JURY. *Time for deliberation. Case in judgment.*

    Where a jury in a murder case retired at 10.30 o'clock Saturday night, and at 11.30 asked the judge how long they would have to return a verdict, and the judge sent them word that court would adjourn at 12 o'clock, and they at once returned a verdict of guilty, the time for deliberation was insufficient.

FROM the circuit court of Kemper county.

HON. S. H. TERRAL, Judge.

Appellant was convicted of the murder of one M. H. Maury, and sentenced to imprisonment for life. The facts of the case briefly stated are these:—

One Nicholson, a white man, accompanied by his little son seven years old, was driving an ox team along a public road. He had occasion to stop, and the oxen were driven on by his son. Defendant, a negro, also in an ox wagon, was going along the road in an opposite direction, and met Nicholson's wagon in charge of the little boy. It was after dark, and, when the wagons met, according to the testimony of Nicholson, defendant insultingly demanded of the little boy to give the way, and cursed and abused him. Nicholson hearing the colloquy, hurried to the scene, and a

fight ensued between him and Maury, in which the latter got the advantage, inflicting severe blows upon Nicholson.

This occurred on Thursday, and on the following Sunday night Nicholson, in company with eleven or twelve of his friends, rode to the farm of Maury, and, after sending several of their number to ascertain if he was at home, rode rapidly into his yard and called for him.  Not finding him, they proceeded to search the premises, and found several colored men shut up in the smoke-house, the door of which some of the searching party had broken open.  Maury, the accused, was not found there, and about that time some one called out, "Here is George."  Some of the party then started in the direction of the cotton house, from which the voice proceeded, when a volley was fired from it and two of the searching party were killed, one of whom was M. H. Maury, a son of George Maury's former owner, and the other a Mr. Cobb, brother-in-law of Nicholson.

On the trial several of the raiding party were examined as witnesses, and testified that their purpose in going to the house of George Maury was merely to arrest him.  It was, however, shown that Nicholson, immediately after his fight on Thursday with defendant, informed Cobb of the fight, and that Cobb, in the time intervening between Thursday and Sunday night, collected the men, who with Nicholson and himself went to the house of Maury. No affidavit for the arrest of Maury had been made, and none of the party had any warrant, or made any announcement to the defendant or his family of the object of their visit.

The testimony is conflicting as to the behavior of the party while on the premises and before the shooting, the testimony mainly being to the effect that they were quiet, and that no shots were fired by any member of the party.

It should also be mentioned that the accused, who testified in his own behalf, denies that he was among the number of those who were at his house at the time of the shooting, and says that he had fled before the arrival of the party and knew nothing of what took place until afterwards.  He also differed from Mr. Nich-

olson in his account of their personal difficulty, and denies that he spoke harshly or insultingly to the little son of Mr. Nicholson.

At the instance of the state the court gave the following instructions :—

" 5. Under the law of this state, any private person has a right to arrest any one who has committed a felony, and when he has reasonable grounds to suspect and believes the person proposed to be arrested to have committed the same, and this too with or without a warrant."

" 10. Even though the jury may believe from the evidence that M. H. Maury, and the parties with him, had no right to make any arrest of George Maury, without a warrant, yet if they believe that M. H. Maury and those with him were informed by Cobb that he had a writ for the arrest of the defendant, and they so believed, and that acting on such information they went with Cobb, and that the defendant, or some one acting in concert with him, wilfully, feloniously and with malice aforethought shot M. H. Maury, from the effects of which he died, then they will find him guilty as charged."

As one of the grounds for a new trial, it is alleged in the motion therefor that the jury after receiving its instructions retired at 10.35 o'clock on Saturday night, and at or about 11.30 o'clock sent the officer to the judge to know how long they had in which to return a verdict, and the judge sent them word it was then 11.30 and that the court would adjourn at 12 o'clock, and that the jury, immediately after receiving the message, returned the verdict. But the facts as to this do not appear otherwise in the bill of exceptions, and the motion for a new trial is not sworn to.

The verdict and judgment was that defendant be imprisoned for life, and Maury prosecutes this appeal *in forma pauperis.*

No counsel for appellant.

*T. M. Miller,* attorney-general, for the state.

CAMPBELL, J., delivered the opinion of the court.

It is inconceivable that the crime of murder is predicable of the facts disclosed by the evidence in this case. The time, and place

and the circumstances of the killing forbid any such conclusion as a verdict of guilty of murder. If the killing by the accused was not justifiable, as being in self-defense, it was no more than manslaughter, unless it could be believed that it (the killing) was referable not to resistance of the illegal arrest, but to malice, and there seems to be little ground for that. It is not claimed that the accused had committed a felony. There was no affidavit or indictment or warrant against him, even for a misdemeanor; and when, on that Sunday, he learned, as he must have done from its publicity, that the friends of the man with whom he had a fight the Thursday night preceding, were being collected for a nocturnal visit to his home, it was quite natural for him, and was his right, to collect *his* friends, and prepare to defend his home and person according to the exigency; and when twelve men, including his adversary in the fight of Thursday, armed with guns and pistols, at or after the hour of 10 o'clock at night, hurriedly advanced into his yard, calling for him, but without any authority to arrest him, and not professing to have, making no announcement of what they wanted him for, and he or his friends fired into the assailing party, and killed some of them, it was not murder. Wharton on Homicide, § 227. The wonder is that the jury so found, and in view of the instructions for the defendant, it is difficult to account for the verdict except upon the assumption of misunderstanding by the jury of the law of the case, or want of sufficient time for deliberation. The fifth instruction for the state had no application to the case, as made by evidence, and was probably asked and given inadvertently, for there was no hint of any felony having been committed; and it is probable that harm was done by this instruction. It is also probable that the tenth instruction for the state misled. In view of this, and the facts attending the homicide, and the short time allowed the jury for deliberation, we are constrained to reverse the judgment, and grant a new trial.

*Reversed and remanded.*