## TOLLIE MAY v. STATE.

[54 South. 70.]

1. CRIMINAL LAW. *Prejudicial communication to the jury.*

Where, in the trial of a murder case, the issue had been submitted to the jury about nine o'clock Monday night and about ten o'clock next day the jury returned into court and stated that they had agreed to disagree and thereupon the judge stated to the jury, that, "that was not a verdict and that he had from then until the first of January in which to have a verdict rendered and received and that it cost money and time to try cases and that it was a dangerous precedent, and that it was no child's play," and he refused to discharge the jury and sent them back to consider their verdict. *Held* that the court committed no error in having the jury to retire to further consider their verdict.

2. SAME.

Where the court in such case stated to the sheriff and bailiff in the absence of the jury that he was going away for two days and would return if necessary, which statement was communicated to

the jury some time during the day and before they had rendered a verdict, and shortly thereafter the jury returned a verdict of guilty, and asked the mercy of the court, and being interrogated by the court as to the meaning of this verdict, no two of the jurors agreed as to its meaning and the court thereupon told them, "If you want a guide as to the law for the state, if you want to return a verdict there is your guide, the fourth instruction. If you wish to study all the instructions for the state and for the defendant, and if you desire to deliberate over the whole thing again, you can do so," and thereupon the jury retired and returned a proper verdict. *Held* that all these facts together constitute reversible error, although the jury swore that they were not influenced in this verdict by anything the court had said.

APPEAL from the circuit court of Kemper county.

Hon. JOHN L. BUCKLEY, Judge.

Appellant, Tollie May, was indicted, tried and convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*Byrd & Wilson*, for appellant.

On the assignment of error relative to the improper influence upon the jury, coercing their verdict, we submit the following authorities: In *Brown* v. *State*, 69 Miss. 398, the facts are that the bailiff in charge of the jury pointed out to one of the jurors an instruction which announced the right of the jury in case of conviction to fix the punishment at imprisonment in the penitentiary for life, and which also gave the form of the verdict, etc.; that he wished the jury would hurry up and agree upon a verdict as he was growing tired of being shut up with them. It was shown in this case that the remark of the district attorney was made to the bailiff in casual conversation and with no expectation that it would be communicated to the jury. On this ground alone the case was reversed. This court speaking through Judge Cooper, said: "We are not prepared to affirm that no injury resulted to the appellant from the suggestions of the bailiff to the jury that his personal desire was

that they should not longer delay the decision, as he wished to be relieved of further waiting; but his officious intermeddling in pointing out an instruction upon which, in the opinion of the prosecuting attorney, they would agree upon a verdict.'' Further, ''It is to be hoped that the zeal of the bailiff has abated by his being retired, under the order of the court, to the common jail, and that, in his reflections there, it has occurred to him that one on trial for his life had rights which even a bailiff must respect.'' In the case at bar, instead of the sheriff and bailiff, who communicated the ''message'' of the court to the jury, being sent to jail, their conduct was upheld and apparently defended by the trial judge. In *Tarkinson* v. *State*, 72 Miss. 731, the same safeguard for the defendant is laid down by this court. Justice Wood in rendering his opinion in that case said in speaking with reference to possible communications with the jury where several were permitted the opportunity of conferring with them, this: ''It does not appear that any of these persons had any conversations with the jury or any of its members touching the case beyond a remark addressed by the Clerk to the jury to the effect that if they were likely to agree on a verdict he would remain and receive it.'' Further, in the same opinion: ''The prime object sought to be attained by the withdrawal of the jury from the bar of the court, by their exclusion from all others and by the exclusion of all others from them, is that in absolute privacy they may deliberate undisturbed by any outward influence. In their deliberations they must examine, discuss and pass upon the evidence; they may have occasion to criticise and discuss parts of it, and properly to discharge their delicate and often difficult duties in these particulars, they should be in a condition to speak and act with perfect freedom. Alone in seclusion, they enjoy this perfect freedom for their deliberations and confidences.'' The facts in this case show that no communication whatever

was made to the jury except by the clerk, while in the case at bar, it must be manifest to the court that not only the bailiff of the jury, but the sheriff, had communicated with the jury and gave them information direct from the court. Further, it will be remembered that two of the Harbours, kinsmen of the sheriff, were state witnesses in the case; and while appellant was unable to show that any further information was imparted or communicated to the jury from the court or the outside, it is presumable that if the sheriff would so far violate his official duties that he might go further. We further quote the language of our own court from the 66 Miss., page 178, in the case of *Senior & Sons* v. *Brogan,* in which Justice Cooper said in this, a civil case, when the information was communicated to the jury that a limitation would be placed upon the time for deliberations in arriving at their verdict: ''Besides the limitation imposed upon counsel, we think the action of the court objectionable, as indicating to the jury the necessity of an almost instantaneous decision, under the implied threat of compelling it to remain over from Saturday to Monday, in the event a prompt verdict was not returned. The record shows that the judge stated, upon the conclusion of the testimony, that he was going home on the train, and would limit counsel to forty-five minutes on each side.''  This, according to the record, would leave only a few minutes for deliberation by the jury, and the case, although a civil one, was reversed on this proposition alone. We are confronted with a far more serious proposition when after the deliberations of several hours, and a positive statement from the jury that they could not agree on a verdict, and one of the jurors having expressed an ardent desire to return home on account of his sick wife, the court announced that he had until the first day of January to receive a verdict in the case, and a communication from him direct to the jury through his officers that unless a verdict was re-

turned before eight o'clock next morning, he would leave to try other cases, and would return when requested by the sheriff. We submit a court could not exercise greater duress in forcing a jury to a verdict against their will. In the 62 Miss. 768, in the case of *Barnett* v. *Eaton*, a civil case is reversed for the same reason. The deliberations of the jury were interfered with by the bailiff, and the court in this case says: "Litigants are entitled to have their controversies in the courts settled by that tribunal to which the law commits their decision, and that body was in this case a jury of twelve sworn men and not a sworn jury and a bailiff." But the fact that a jury must be absolutely free from outside communications was more emphatically announced by this court in the case of *Shaw* v. *State*, 79 Miss. 577. The only outside communication to the jury, so far as the record in this case shows, was that the sheriff said to the bailiff of the jury "just for mischief more than anything else" that the judge was going home this afternoon and that they would have to stay there until Monday morning. Judge Calhoun in reversing the case says: "Such communications to the jury are presumed to be prejudicial and necessitate a reversal," and citing a large number of cases in support of his position. That the jury should be left free from any outside influence was the purpose of our legislators, there can be no doubt. Section 790 of the Code of 1906 expressly prohibits any officer from having any communication with the jury after being retired to consider their verdict, except by order of the court, and makes the conduct of such officers a violation of the law. In the present case, instead of executing the law against the violators of this plain statute, the court defended the action of those violating the same.

*Carl Fox,* assistant attorney-general, for appellee.

It is assigned for error that a new trial should have been granted because of the remarks of the court when

the jury reported that they could not agree, or that they had "agreed to disagree;" and because of his remarks when the jury had returned a verdict of guilty and asked the mercy of the court; and also because the Judge's remark to the sheriff and one of the bailiffs in charge of the jury that he expected to go to Meridian and would not return until Friday was communicated to the jury.

It is practically impossible to make an abstract of the testimony taken at the hearing of the motion for a new trial in support of this ground of the motion that will aid the court. It was perfectly proper, of course, for the judge to send the jury back after they had reported that they had "agreed to disagree," and to admonish them that they should arrive at a verdict if possible to do so. It appears from the testimony of one of the jurors that he understood the remark .of the judge, that he had until January to receive a verdict, to mean that he would remain as long as the jury desired to deliberate.

According to this juror's testimony, therefore, the jury did not understand the judge to threaten the jury that he would hold them together in confinmenet until January. It is agreed that the judge pointed out the fourth instruction for the state as a guide for the jury when he sent them back to their room to deliberate again upon their verdict, after they had brought in a verdict of guilty with a prayer for the mercy of the court. If the court will read what was said by the trial judge on page 217 of the record, they will see that he had no idea whatever the jury could have possibly understood him, of instructing the jury that they must look to that instruction alone.

The same sort of a verdict was brought in in the case of *Sykes* v. *State,* 42 So. 838, and in *Smith* v. *State,* 75 Miss. 542 and 548, and *A. Vant* v. *State,* 40 So. 483; and this court held that the verdict was cloudy and that the jury ought to have been sent back to bring in a proper

verdict. In the case at bar, the jury had been interrogated at length by attorneys for defendant, the court, and the district attorney as to the meaning of their prayer for the mercy of the court. It appeared that they attached a different meaning to it. The court said: "If you want a guide as to the law for the state, if you want to return a verdict, there is your guide, that fourth instruction. If you study all the instructions for the state and for the defendant, if you want to deliberate over the whole thing again, you can do so." The jury were at sea regarding the punishment which would be visited upon the defendant. Although they had agreed upon his guilt, they were in no sense directed to find him guilty or to fix his punishment at imprisonment for life or hanging.

The jurors testified that they were not coerced into a verdict and that their verdict was not influenced by the communication by the bailiff of the judge's jesting remark that he expected to go to Meridian and remain until Friday.

Counsel for appellant cite *Shaw* v. *State,* 79 Miss. 577, as an authority in point. In that case it was offered to be proved by the jurors that a similar communication to the jury did influence their verdict. This testimony was refused on the idea that they could not impeach their own verdict. The court held that the testimony was competent. The court said: "There is no evidence that the misconduct of the sheriff worked no injury." In the case at bar, there is proof that the misconduct of the sheriff and of the bailiff worked no injury.

Argued orally by *Roger E. Wilson* and *Adam Byrd,* for appellant, and *Carl Fox,* assistant attorney-general, for appellee.

McLAIN, C.

Appellant was indicted, tried, convicted, and sentenced to the penitentiary for life, in the Kemper county cir-

cuit court, for murder, and from this action of the court he appeals to this court.

There are numerous assignments of error presented to this court for its consideration; but we will only consider the eighth and ninth assignments, and in doing so we will consider them together. These two assignments read as follows: "(8) It was error to overrule the motion of defendant for a new trial, because of communication having been had with the jury during their deliberations, which communications were by the sheriff and the bailiff of the jury, and were prejudicial to appellant and in violation of law, and that the said communications influenced the verdict of the jury, coercing them to render a verdict that was not their free and voluntary conclusion, and which was coerced by the conduct of the judge and said officers. (9) It was error in the court to state to the jury, when they reported the second time that they could not agree, that that was no verdict, and that he had from said time until the 1st day of January in which to have said verdict rendered and received, and that it costs money and time to try cases, and that it was a dangerous precedent, and that it was no child's play, and afterwards said to the sheriff and one of the bailiffs of said jury that he was going away from De Kalb, Mississippi, on Wednesday morning, the 17th, and would return Friday, the 19th, if needed; that he had some *habeas corpus* cases to try in Meridian, Lauderdale county, Mississippi, on Thursday, the 18th, and if he was needed the sheriff could phone him; it being shown by the record that said statements of the court were communicated to the jury and the verdict of the jury was no doubt rendered to prevent being the victim of the judge's threat."

The record of this case discloses that this cause was submitted to the jury between nine and ten o'clock on Monday night. It further shows that early on Tuesday morning the jury reported to the court that they could.

not agree or rather stated to the court that they had agreed to disagree, and the judge stated to the jury that that was not a verdict, and that he had from then until the 1st day of January in which to have a verdict rendered and received, and that it cost money and time to try cases, and that it was a dangerous precedent, and that it was no child's play, and he refused to discharge the jury, and sent them back to consider of their verdict. We do not think the court committed any error in having the jury to retire to further consideration of a verdict. The record shows that the judge was very anxious to get away to Meridian, and while the jury was out he said in substance, in the presence of the sheriff and one of the bailiffs, that he was going away from De Kalb on Wednesday morning, the 17th, and would return Friday, if needed, and that he had some *habeas corpus* cases to try in Meridian on the 18th, and if he was needed the sheriff could phone him, which statements of the court were communicated to and made known to the jury some time during the day and prior to the rendering of their verdict. These statements were made by the judge with no intention that they should be told to the jury; but unfortunately, without the knowledge or the consent of the judge, they were communicated to the jury. During that day the jury returned a verdict, "We, the jury, find the defendant guilty, and ask the mercy of the court." The jury was interrogated at length by the court and the attorneys as to the meaning of their prayer for mercy of the court. It appears that no two jurors scarcely had the same view as to what it meant. The court said in substance to the jury: "If you want a guide as to the law for the state, if you want to return a verdict, there is your guide, the fourth instruction. If you wish to study all the instructions for the state and for the defendant, and if you desire to deliberate over the whole thing again, you can do so." Soon there-

after the jury returned a verdict in proper form, upon which he was sentenced to the penitentiary for life.

Upon a motion for a new trial in this case, it is true, the jurors testified that they were not coerced into a verdict, and that their verdict was not influenced by the communication by the bailiff to them, by the remarks of the judge to the effect that he expected to go to Meridian and remain until Friday, nor were they influenced by the other remarks of the judge. This record shows that this is a very close case upon the facts. Taking that into consideration, along with the facts upon which this assignment of error is based, we are unwilling to affirm that no harm resulted to defendant from these improper remarks and communications to the jury, though independent of the fact of the closeness of the case upon its merits, we think, under all the facts and circumstances disclosed by this record, that the improper communications to the jury are within themselves sufficient to warrant a reversal of this case. Such communications to the jury as are disclosed by this record are presumed to be prejudicial, and this necessitates a reversal. Such has been the uniform holding of this court. The reasons leading to such a conclusion are founded upon solid principles of law. The jury when it retires to consider its verdict, should be left absolutely free from any and all outside influence. When it retires, it is supposed to be alone and in seclusion, so to speak, there to consider the case submitted to them with perfect freedom. This very question has been so thoroughly considered and so elaborately discussed in former decisions of this court that we feel that it is not necessary to discuss it further. It cannot be enlarged upon. We will therefore content ourselves by citing those cases that are, in a more or less degree, controlling of the question here presented: *Shaw* v. *State*, 79 Miss. 577, 31 South. 209; *Brown* v. *State*, 69 Miss. 398, 10 South. 579; *Tarkinson* v. *State*, 72 Miss. 731, 17 South. 768; *Senior & Sons*

98 Miss.—38

v. *Brogan,* 66 Miss. 178, 6 South. 649; *Barnett* v. *Eaton,* 62 Miss. 768; *Green* v. *State,* 53 South. 415.

           *Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and, for the reasons therein indicated by the commissioner, the case is reversed and remanded.