# W. H. GURLEY *v.* STATE.

[57 South. 565.]

1. HOMICIDE. *Dying declarations. Admissibility. Improper argument of counsel. Instructions.*

    The competency of dying declarations is exclusively for the consideration of the court.

2. SAME.

    Where a dying declaration is admitted in evidence by the court, it then becomes the province of the jury to decide upon its credibility, and the jury in doing so may take into consideration all the circumstances under which the declarations were made, including those already proved to the court and may give to the evidence only such credit or force as, upon the whole they think it deserves.

3. INSTRUCTIONS.

    The courts should not single out particular portions of the evidence in a cause, and tell the jury by instructions, that it ought or might consider this, that, or another part of the evidence, in connection, with the other evidence in reaching a verdict.

4. APPEAL. *Record. Conclusiveness.*

    The supreme court on appeal, must accept as true the statement of the trial court of its recollection of the proceedings sought to be reviewed.

5. CODE OF 1906, SECTION 1918. *Comment on failure of defendant to testify.*

    Under the Code of 1906, section 1918 forbidding counsel to comment on the failure of defendant to testify, the word "comment" as employed in the statute, does not mean to criticise or condemn, or anathematize the accused on his failure to testify. It forbids any comment friendly or unfriendly. It forbids any remark of any character, in any words upon the failure of the accused to testify. The attention of the jury is not to be called to the fact at all by counsel.

6. SAME.

    Where counsel does comment on the failure of the accused to testify, the fact that the court tells the jury not to consider such comment will not save the case on appeal from being reversed.

APPEAL from the circuit court of Neshoba county.

HON. GEO. H. ETHRIDGE, Special Judge.

W. H. Gurly was convicted of manslaughter and appeals.

Among other instructions granted by the court for the state is the following: "No. 6. The court charges the jury, for the state, that the dying declaration is legal testimony, and if they believe beyond a reasonable doubt in this case that shortly before the death of the deceased, and at a time when he was conscious and believing that death was imminent and impending, he made statements to Morgan Parker, P. G. Tinsley, and J. T. Monroe, and other witnesses who testified in this case, as to how the difficulty occurred, then it is the duty of the jury to consider and weigh the same, along with the other testimony in the case, in determining the guilt or innocence of the defendant."

*Flowers, Alexander & Whitfield,* for appellant.

The court decides whether the declaration offered to be proved was made under a realization of impending death. *Owens* v. *State,* 59 Miss. 547; *Lipscomb* v. *State,* 75 Miss. 559; *Guest* v. *State,* 96 Miss. 871.

This question is a preliminary one and should be decided by the court in the absence of the jury. *Lipscomb* v. *State, supra; Guest* v. *State, supra.*

Since the proof of the dying declaration is a material part of the case, and since the court decides whether it was made under a solemn sense of impending dissolution, the court should be satisfied beyond a reasonable doubt that the declaration was so made. The accused is entitled to the benefit of the reasonable doubt on questions of fact decided by the court as well as on questions decided by the jury. *Bell* v. *State,* 72 Miss. 507; *Lipscomb* v. *State,* 75 Miss. 559; *Guest* v. *State,* 96 Miss. 871.

It is apparent from the instructions for the state and the defense that the court did not deal with the alleged

dying declarations in the way the law requires. The trial judge did not consider that the question of the competency of the evidence as to the statements made by Dr. Davis was one for him to decide. He would only make such preliminary examination as was necessary to see whether the evidence both as to the condition of the declarant's mind at the time and as to the statements made was sufficient to go to the jury. He submitted to the jury the question as to whether Dr. Davis was under a sense of impending death and without hope at the time the alleged statements were made. This was done by instruction No. 6 for state which is:

"The court charges the jury for the state that the dying declaration is legal testimony, and if they believe beyond a reasonable doubt in this case that shortly before the death of the deceased, and at a time when he was conscious and believing that death was imminent and impending he made statements to Morgan Parker, P. C. Tinsley and J. T. Monroe, and other witnesses who testified in this case, as to how the difficulty occurred, then it is the duty of the jury to consider and weigh the same along with the other testimony in the case in determining the guilt or innocence of the defendant."

And then he gave instruction No. 6 for the defendant which is:

"The court further instructs the jury that they must be satisfied beyond a reasonable doubt that at the time Dr. Davis made the declaration as testified to by the witness that he had at that time a full realization and solemn sense of impending death and that he had abandoned all hope of life; and the jury must be further satisfied beyond a reasonable doubt that Dr. Davis was sane and rational at the time he made said declarations, and if the jury is so satisfied beyond a reasonable doubt, then you are instructed that you cannot consider any part of said declarations, except that part pertaining to

the killing, and the circumstances immediately attending it and forming a part of the transaction at the time.''

We call the court's attention here to these two instructions as furnishing an explanation of the action of the court in admitting the statements made to Monroe, Harper and Tinsley. The court did not proceed upon the theory that it was his duty to determine finally these preliminary questions. If he did so act, why submit the same questions to the jury? It is not for the jury to say whether the man was conscious of approaching death and without hope. With this issue the jury has nothing to do. *McDaniel* v. *State,* 8 S. & M. 401; *Nelms* v. *State,* 13 S. & M. 500; *Lipscomb* v. *State, supra.*

The second important error committed in the trial court which in our judgment calls for a reversal of the judgment of conviction is that the Hon. A. M. Byrd, who made the closing argument for the state commented indirectly upon the failure of the defendant to testify.

Our legislature, deeming that the right of the defendant to testify in his own behalf or decline to testify should be protected, undertook to write such safe-guard into the statute. Section 1918 of the Code is as follows: ''The accused shall be a competent witness for himself in any prosecution for crime against him; but the failure of the accused, in any case, to testify shall not operate to his prejudice or be commented on by counsel.''

In the face of this statutory provision prosecuting attorneys will not directly and expressly comment upon the failure of the defendant on trial to take the stand in his own behalf. Such comments these days are always indirect. The statute is sought to be evaded by the use of expressions which may produce the desired effect and yet not be condemned. The comment in the case at bar is indirect and adroit. The able attorney who made the closing argument in behalf of the home man and in the prosecution of the stranger did not say:

"The defendant has not taken the stand to testify; he is afraid to do it; he cannot face the jury and tell how the thing happened without convicting himself; if he knew he was innocent he would not keep the jury in the dark about it but would give them the benefit of whatever information he may have."

Nothing as direct and palpable as this was done or said.

But one of the attorneys for the defense having stated to the jury that if Gurley had died from his wounds and Davis had recovered, the latter would be on trial for his life and the learned prosecuting attorney seized upon this remark and proceeded to draw a contrast between the conduct of Burley in the trial and the supposed conduct of Dr. Davis if he had been on trial.

We may take the language of the presiding judge upon which he acted in overruling the motion for a new trial. See page 395 of the record where the following statement by the court is found:

"The court recollects the matters referred to in the testimony, and was watching the arguments of counsel very close, and I recollect the defendant's counsel had commented on the fact that if Dr. Davis had gotten well and defendant had died, that Dr. Davis would have been on trial perhaps instead of the defendant on a similar charge, and that counsel for state, Mr. Byrd, in alluding to that, quoted from counsel for the defendant in substance and said, "if that was true, he would have put Blankenship and other witnesses up and Dr. Davis would have mounted the stand and told how that occurred,' this statement being objected to, the court promptly sustained the objection and instructed the jury not to regard it, and the court also instructed the jury not to regard any statement as to the defendant not testifying, and I will also state that the instructions asked for by the defendant on that line on that point were given prior to the opening of the arguments of counsel and those instructions were read by counsel for the de-

fendant to the jury and they were fully informed thereby by defendant's request, no prejudice could result from the defendant's failure to testify."

This is a statement by the court as to what he heard the prosecuting attorney say in his closing argument. This statement of fact touching the incident is that upon which the court acted in holding that no harm was done and in overruling the motion for a new trial.

This remark of counsel as understood by the presiding judge amounted to saying that, "Dr. Davis, if he were on trial, would mount the stand and tell this jury how it happened. He would not do as this defendant has done, keep his mouth closed and refuse to tell the jury how the thing happened."

This remark held up to the jury the failure of Gurley to testify. It suggested to the jury that Gurley should be condemned for his failure to testify. The other man, if he were on trial, would be more frank, and less afraid of a full disclosure, ready to give the jury the benefit of all he knew about it. Nothing could be plainer than that this was indeed a comment upon the failure of the defendant to take the stand in his own behalf. The statute contemplates that the silence of the defendant shall not be called to the attention of the jury in the argument for the state. *Sanders* v. *State,* 73 Miss. 444; *Reddick* v. *State,* 16 So. Rep. 490; *Drane* v. *State,* 92 Miss. 180, 45 So. 149.

*Claude Clayton,* assistant attorney-general, for appellee.

This brings me to a consideration of a material and vital proposition of law as to the admission of these declarations in evidence, and while I admit that it is always necessary to lay a foundation for the introduction of dying declarations on the trial of an indictment for murder by first proving that they were made under a sense of impending death, yet this is a fact, and can be proven and established in any of the accepted ways of

establishing a fact. It may be proven by the express words of the deceased, that he knowns that he is bound to die, or there may not be any direct expressions by the declarant that he has abandoned all hope of recovery, as by proving this fact by his conduct and condition, the facts and circumstances which surround him that will reasonably satisfy the court that the declarations were made in extremis, and that he was at the time of making these declarations conscious of his approaching death.

The profession of deceased, his skill as a surgeon, his knowledge of gunshot wounds, his knowledge of the fatality caused by the perforation of the abdominal organs his actions and utterances, with reference to the preparation of his business affairs, his consideration of his family, then dependent upon him, the collection of his insurance policy, and the disposition of his estate, all are potent factors in establishing the condition of his mind at the time when he detailed the particulars of the difficulty. In suport of this contention, I refer the court to 21 Cyc. 982, section 9, and from this authority it is shown that it is the universal and accepted rule in almost every state in the Union, and in England, and Canada. Our supreme court has adopted this rule as to the establishment of the condition of the mind of the declarant in the case of *Lipscomb* v. *State,* 75 Miss. 529, 23 So. 210; *Bell* v. *State,* 72 Miss. 509, 17 So. 232; *Dillard* v. *State,* 58 Miss. 368; *McDaniel* v. *State,* 8 Smedes and Marshall 401, 47 Am. Dec. 93.

It is contended by counsel for appellant that the remarks made by Judge Byrd in his closing argument was a comment upon the failure of the accused to testify. I am frank to admit that if it was a comment upon the failure of the accused to testify, it would be reversible error, but I do not concede that it was even remotely a comment upon the failure of the accused to testify. In order that the court may know exactly about this point, I will quote exactly from the record what Mr. J. W.

Wadsworth stated as being the exact language used by Judge Byrd in his closing argument, to-wit: "Yes, and if Dr. Davis were on trial for the murder of this defendant, he would have mounted the stand and told how this death happened and would have been acquitted."

Mr. Byrd says that he used the following language: "Mr. Wadsworth in his speech had stated that if Gurley had died, and Dr. Davis had lived, perhaps he would have been on trial for the murder of Dr. Gurley, and in reply to this remark of counsel for the defense, I said in substance: 'Gentlemen of the jury, my friend Mr. Wadsworth says that if Gurley had died instead of Dr. Davis, then Dr. Davis would have likely been on trial for this offense.' I then said, 'Yes, that may be true, and if it were, then he would put Blankenship and the other state witnesses on the stand, and instead of speaking himself by a dying declaration he would have mounted the stand, and told you how that difficulty occurred.'"

The testimony of the court, I shall not quote, but from his interpretation, being present at the time, of what was said by Mr. Byrd, in response to the comment of counsel for the defendant was not a comment upon the failure of the accused to testify, but was wholly circumscribed by the bounds of legitimate argument that should be accorded to counsel and especially so when it was made in response to the proposition laid down by counsel for defendant who had just preceded Judge Byrd.

The presiding judge at this trial, in order to be absolutely and unerringly correct about the matter, promptly excluded this remark and it was not a comment upon the failure of the accused to testify.

Argued orally by *J. N. Flowers,* for appellant.

Argued orally by *Claude Clayton,* assistant-attorney general for state.

McLEAN, J., delivered the opinion of the court.

The appellant was indicted for murder, convicted of manslaughter, and sentenced to the penitentiary. The appellant was an employee of the Deemer Lumber Company, and one Dr. Davis was the surgeon or physician of the company. It was the rule or custom of the company to deduct from the wages of its employees the sum that might be due its surgeon. The appellant was indebted to Dr. Davis in the sum of ten dollars, and the lumber company held up the payment of this sum of money for the purpose of permitting the settlement between its surgeon and the appellant as to what was due Dr. Davis. This seemed to be the cause or origin of the difficulty. As to what occurred immediately before and just at the time of the killing, which terminated in the appellant shooting Dr. Davis and Dr. Davis shooting appellant, the evidence is conflicting. In view of the fact that the case is to be reversed, we do not deem it proper to express any opinion one way or the other upon this evidence.

In order to support the theory of the state as to what occurred at the time of the fatal encounter, the dying declarations of Dr. Davis were admitted in evidence. As stated, and as argued by counsel for both the state and the appellant, the case hinges on the question: (1) Whether or not the dying declarations were admissible (this may be termed "a dying declaration case"); (2) The reference of counsel for the state, in his closing argument, to the failure of the defendant to testify. It is altogether unnecessary for us to consider the action of the court below relative to the dying declarations, or as to any of the instructions which were given or refused, except to say that instruction No. 6, given for the state (which the reporter will copy in full), should not have been given. As to whether this instruction, standing alone, would be sufficient to reverse the case, it is not now necessary to decide.

The competency of dying declarations is exclusively for the consideration of the court. Having once decided that it is competent, that the party was of the frame of mind required by the law to authorize the admission of his dying declarations, the power of the court over that question is at an end.

It then becomes the province of the jury to decide upon the credibility, who are at liberty, in doing so, to take into consideration all the circumstances under which the declarations were made, including those already proved to the court, and to give to the evidence only such credit or force as, upon the whole, they might think it deserves. But, when the court has once passed upon the competency of the evidence, its duty then ends. As was said by this court in *Thompson* v. *State,* 73 Miss. 584, 19 South. 204: "We have never perceived upon what principle the trial courts have acted in singling out particular portions of the evidence in a cause, and telling the jury that it ought or might consider this, that, or another part of the evidence, in connection with the other evidence in reaching a verdict. By admitting the evidence the court has declared its competency, and the jury should be left to its function of determining the weight and effect to be given to it."

Careful, protracted, and repeated examinations of the voluminous record have satisfied us that there is reversible error relative to the argument made by the prosecuting counsel. During the closing argument of the counsel representing the state, the counsel referred to the failure of the defendant to testify. There is some controversy between the counsel for the state and counsel for the defendant as to just exactly what this statement was. The court, however, puts in the record what his recollection of this was, and we are bound to accept the statement of the court as being the true and correct interpretation and language of counsel.

The record shows this: "The court recollects the matters referred to in the testimony, and was watching

the arguments of counsel very close; and I recollect that defendant's counsel had commented on the fact that, if Dr. Davis had gotten well and defendant had died, Dr. Davis would have been on trial, perhaps, instead of the defendant, on a similar charge, and that counsel for the state, Mr. Byrd, in alluding to that, quoted from counsel for the defendant and said: 'If that was true, he would have put Blankenship and other witnesses up, and Dr. Davis would have mounted the stand and told how that occurred.' This statement being objected to, the court promptly sustained the objection and instructed the jury not to regard it; and the court also instructed the jury not to regard any statement as to the defendant not testifying. And I will also state that the instructions asked for by the defendant on that point were given prior to the opening of the arguments by counsel, and those instructions were read by counsel for the defendant to the jury, and they were fully informed thereby, by defendant's counsel, that no prejudice could result from the defendant's failure to testify.''

It is urgently and forcefully insisted by appellant that this was error, and reversible error. It must be borne in mind that, in the altercation between Dr. Davis and the defendant, both were shot, that there was a conflict in the evidence of the eyewitnesses as to what occurred at the time of the shooting, and that the dying declarations of Dr. Davis were material—in fact, the dying declarations constituted perhaps the most important and material part of the evidence for the state. Section 1918 of the Code provides that: ''The accused shall be a competent witness for himself in any prosecution for crime against him; but the failure of the accused in any case to testify shall not operate to his prejudice or be commented on by counsel.'' This court, in *Yarbrough* v. *State,* 70 Miss. 593, 12 South. 551, in condemning any reference whatever by the prosecution for the failure of the defendant to testify, says that: ''The word 'com-

ment,' as employed in the statute, does not mean to crit-
icise or condemn or anathematize the accused for his
failure to testify.  It forbids in unmistakable language
any comment, friendly or unfriendly.  It forbids any re-
mark of any character in any words upon the failure of
the accused to testify.  The attention of the jury is not
to be called to the fact at all by counsel''—and for the
reason, alone, that comment was made by the counsel
upon the failure of the defendant to testify, a new trial
was granted.

In *Reddick* v. *State*, 72 Miss. 1008, 16 South. 490, the
question was again before this court, and in that case
this court says:  ''The counsel for the state himself ad-
mits that, referring to the alleged admission made by
the prisoner to the state's witness Swayze, he used this
language, viz.:  'And he has not denied it.'  He further
admits that when the prisoner's counsel interrupted him,
suggesting the impropriety of his comment, he corrected
himself, and said:  'It has not been denied.'  The coun-
sel making the comment, on the hearing of a motion for
a new trial, testified that it was not his intention to
refer to the fact that the defendant failed to take the
stand in his own behalf; but his intention was immate-
rial, if in fact he used such language as could be reason-
ably construed to be a comment, and an unfriendly one,
too, upon the failure of the accused to testify.  The
court below so construed the remark.  We so construe
it, and the jury without doubt so understood it.  It is
true that, immediately on the prisoner's counsel except-
ing to the language of the counsel for the state, the court
instructed the jury that the district attorney was pro-
hibited from commenting on the defendant's failure to
take the stand in his own behalf, and that the jury must
not consider any such comment.  But this action of the
court could not and did not undo the wrong already
done.  The statute forbids absolutely any comment on
the failure of the accused to testify, and it is the right

of every person charged with crime to insist that he enjoy this statutory immunity from criticism by hostile counsel; and the disregard of this plain statute, and the decisions of this court upon it, by the state's own counsel must reverse the judgment appealed from in this case"—referring to *Yarbrough* v. *State*, 70 Miss. 593, 12 South. 551.

In *Sanders* v. *State*, 73 Miss. 444, 18 South. 541, this question was again before the court, and for the third time this court, in the most positive language, condemned any reference whatever by counsel for the state to the failure of the defendant to testify, and on that ground alone reversed the case. In this latter case the court said: "It is true the court promptly rebuked counsel, and directed the jury to disregard the fact alluded to, and counsel then asked that his remarks be considered as withdrawn; but the court, for the second time, held that this did not cure the error." In *Boyd* v. *State*, 84 Miss. 414, 36 South. 525, this court held that it was reversible error for the state to prove upon the trial in the circuit court that the defendant did not testify before the justice of the peace who conducted the preliminary investigation.

No ingenuity, however artful, no subtlety, however refined, can escape the conclusion that this statement made by the prosecuting counsel held up to the jury the failure of the defendant to testify. It was a thrust, sharp and incisive as a rapier, at the appellant that he should be condemned for his failure to testify. If the other man, Dr. Davis, were on trial, he would be more frank, and not be afraid of a full disclosure; but this defendant was afraid of a full disclosure, and hence dared not testify. This was the necessary and inevitable effect produced upon the mind of the jury. If prosecuting counsel expect this court to punish violators of the law, they themselves must obey the law, the plain and positive requirements of the statute. In their zeal and earn-

estness to secure convictions they must confine themselves to legitimate argument, such, at least, as has not been expressly prohibited by the legislature, and also condemned by the court of last resort.

For this error the judgment is reversed.

*Reversed.*