# WADE *v.* STATE.

(Division B.   Dec. 9, ·1929.)

[124 So. 802.   No. 28102.]

Thames & Thames, of Vicksburg, and **M. Ney Williams**, of Raymond, for appellant.

**Hardy R. Stone**, Assistant Attorney-General, for the state.

Argued orally by **Jas. D. Thames**, for appellant.

**Griffith, J.,** delivered the opinion of the court.

Appellant was convicted in the circuit court of Sharkey county of murder, and, the jury having returned a verdict fixing the penalty at life imprisonment, the sentence pronounced was in accord therewith.

The case is made solely on circumstantial evidence, and, while the proof would be held sufficient, if there were no other question in the case, we must say that there are some features in the evidence which may well have given a conscientious juror deep concern as to what his verdict should properly be. There is therefore presented a case wherein this court should be well satisfied, and should be able to rest with entire confidence on the record that the result has been the untrammelled, free, and deliberate verdict of every one of the twelve men who composed the jury, uninfluenced by any avoidable extraneous considerations or improper pressure of events. As said in Lamar v. State, 64 Miss. 687, 2 So. 12, 14, and in Green v. State, 97 Miss. 834, 53 So. 415: ''Twelve men, elected, impaneled, and sworn to try the issue joined, must concur in a verdict of guilty before the humblest can by our law be deprived of his liberty; and such is the jealousy with which trial by jury is guarded that, when it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused will be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law, and every one is to be judged by the law.''

There are two special bills of exceptions as follows:

''The above-styled case was submitted to the jury impaneled to try it at ten o'clock P. M. March 15, and the jury was instructed by the court to retire and consider their verdict. The jury retired, and after deliberating a short while was locked up on orders of the court for the night. At the reconvening of court at nine o'clock

March 16, the jury had not reached a verdict. They remained in their room deliberating on the case until 3:55 P. M. on March 16 the following day, when the court directed the jury at their request, to make a report, whereupon the jury returned in open court accompanied by their bailiffs, whereupon the court asked the jury if they had agreed as to a verdict, to which they replied they had not. One of the jurors stated they were trying to reach a verdict and in answer to a question if they did not think they could agree one of them said 'I don't know,' whereupon the court stated to them that if they were trying he thought maybe they might reach a verdict, thereupon he looked at his watch and said he was going home this evening, that that did not mean he was going to adjourn court, that he had plenty of time and court would not be reopened until the Monday morning following. He stated he was not telling them to find a verdict but he would let them go back and try again, and after making this statement to the jury the court directed that they retire to their room and further consider their verdict, to which action of the court the defendant by his counsel, in open court, excepted and presents this his special bill of exceptions to such action and statement to said jury.''

''Now comes the defendant by attorneys and for a special bill of exceptions shows to the court that after the happenings and occurrences set out in the first bill of exceptions, and the jury had been directed by the court to retire to their room and further consider their verdict as shown by the first bill of exceptions, that in a short while, a bailiff attending the jury returned in open court and informed the court that the jury stated they could not reach a verdict this afternoon, which was Saturday, March 16th. The court thereupon stated, that was all right. In a short while, possibly thirty minutes after the bailiff had so stated, which was about four-thirty Saturday afternoon, the court notified the attorneys

for defendant and the officers that he adjourned court until nine o'clock Monday morning, March 18th, and thereupon he repaired to the hotel, which is approximately one hundred fifty feet from the courthouse, and got in his automobile, and left Rolling Fork, in Sharkey county. That the hotel and the car in which the Judge left Rolling Fork were in plain view of the courthouse and the room in which the jury was deliberating. That about ten minutes after the judge had left as aforesaid, one of the bailiffs in charge of the jury called to the defense counsel, who was also leaving the same hotel, and informed him that the jury had reached a verdict, and the county attorney and the sheriff rushed over to counsel for defendant and gave him the same information as aforesaid. That the sheriff undertook to stop the Judge enroute to Vicksburg, in Warren county, fifty miles away, but as counsel for defense had gone and had not met the court, who had not returned to receive the verdict after having been notified at Cary, eight miles south of Rolling Fork, that said verdict had been reached and said Judge proceeded to Vicksburg and did not re-open court until nine o'clock Monday morning, March 18th, to which action of the court the defendant hereby excepts and offers this his special bill of exceptions.''

The question presented by said bills has often been, in various forms, before this court. Reviewing those that may be classed as the later cases, we find them to be thus briefly stated:

In Vicksburg Bank v. Moss, 63 Miss. 74, a civil case, the jury retired to consider of their verdict about three o'clock P. M. Saturday. About four o'clock the bailiff announced to the court that the jury had not agreed, whereupon the court informed them, through the bailiff, that they must remain together until they agreed, and, if they did not agree by nine o'clock P. M., they would have to remain in the jury room, as the court would then

adjourn until Monday. About half-past five o'clock the jury returned a verdict. The court said: "The communication had with the jury, after they retired to consider of their verdict, was an irregularity not to be encouraged. According to some authorities, it would vitiate the verdict, but we are unable to see how appellant was prejudiced by the occurrence. . . . The facts that the jury deliberated about an hour and a half after the communication was made to them, and that they agreed and returned their verdict into court several hours before the time at which it was suggested the court would adjourn, show that they did not act hastily, and were not unduly influenced by the communication."

A case somewhat similar to the above on the facts is Wiltcher v. State, 99 Miss. 374, 54 So. 726. The case was finally submitted to the jury late Friday evening. Some time late on Saturday afternoon the jury sent word to the judge that they were "hopelessly hung," and asked the permission that they be allowed "to take a walk on Sunday morning and evening." The judge sent word through the bailiff granting the permission requested, and the further word that he would remain within call until nine o'clock P. M. Saturday, and would receive a verdict if brought in by that hour, after which he would go to his home in another county, and would not be back until Monday morning. The jury reported at nine o'clock that they were ready with a verdict, but, the judge having then departed, the verdict was not delivered until Monday morning. The court declined to reverse the case on the showing made. This case might, without a mature consideration of it, be thought to be in strong point against the present appellant, but it will be observed that in the said case just cited the jury had already become reconciled to the necessity of remaining over through Sunday, and had prepared to adjust themselves to that situation.

In Senior v. Brogan, 66 Miss. 178, 6 So. 649, the argument was begun before the jury on Saturday afternoon at two-thirty o'clock. The court limited the argument to forty-five minutes to the side, and stated in the presence and hearing of the jury that he was doing so because he was going home on the train passing there in about one hour and forty minutes. The court said: "Besides the limitation imposed upon counsel, we think the action of the court objectionable as indicating . . . the necessity of an almost instantaneous decision, under the implied threat of compelling it to remain over from Saturday to Monday in event a prompt verdict was not returned;" and the judgment was reversed.

In Maury v. State, 68 Miss. 605, 9 So. 445, 24 Am. St. Rep. 291, the jury retired to consider their verdict at ten thirty-five o'clock on Saturday night, and at about eleven-thirty o'clock sent an officer to the judge to know how long they had in which to return a verdict. The judge sent them word that the court would adjourn at twelve o'clock, and immediately upon receipt of this message the jury returned a verdict. The verdict was set aside and the judgment reversed.

In Brown v. State, 69 Miss. 398, 10 So. 579, the bailiff in charge of the jury began to complain at the jury because of their delay in agreeing on a verdict, urging them to hurry, because he was, as he stated to them, tired of being shut up with them; and, in order to aid them, he communicated some word that he represented to them as having come from the district attorney, although the district attorney had sent no such word. This verdict was set aside, and the judgment reversed.

In Shaw v. State, 79 Miss. 577, 31 So. 209, the case was submitted to the jury about two-thirty o'clock P. M. on Saturday. About four-thirty o'clock, the sheriff called to the bailiff in charge of the jury "that the judge would leave for his home in a few minutes, and that, unless they

would return a verdict at once, they would be held until Monday." Soon thereafter a verdict was brought in. The court briefly said: "Such communications to the jury are presumed to be prejudicial, and necessitate reversal. . . . There is no evidence that the misconduct of the sheriff worked no injury. The influence of the declaration of so high an officer is much graver than if made by an outsider," and the verdict was set aside. This case comes the most nearly in point with the case in hand. In the case cited the sheriff told the jury that they would have to be held until Monday, unless a verdict should be returned in a short time, while in the case here before us the judge, in the substance of what he said and did, told them to the same effect.

In Lewis v. State, 109 Miss. 586, 68 So. 785, the jury had been in deliberation for two days, and, it then appearing to the jury that they would not be able to agree, they sent word to the judge by the bailiff asking to be discharged, and the bailiff returned with the message or pretended message from the judge that he would keep them for another week if they did not come to a verdict. Although the verdict was not returned until three days later, it was set aside, and the judgment was reversed.

In May v. State, 98 Miss. 584, 54 So. 70, after the jury had been out on the case since the preceding day, the judge stated to the sheriff and bailiff that he would be compelled to leave the next morning, and could not return until the third day thereafter. This statement was without the knowledge or consent of the judge communicated to the jury, and thereafter during that day a verdict was returned. This verdict was set aside and the judgment reversed.

It will be observed that in a majority of the foregoing cases the question arose out of what happened on a Saturday, as is the case now at the bar; and an examination through the numerous cases from other states discloses

that this same feature—the hastening of verdicts by the express or implied threat to compel the jury to remain locked up from Saturday over until Monday—has appeared in many, if not most, of such cases. And this particular feature has not appeared so often as a mere matter of accident. Every judge knows the dread with which the average juror approaches the contemplation of being compelled to remain confined within the average courthouse during the long and unpleasant hours from Saturday night to Monday morning—a dread that is heightened, and in a large measure justified, by the crude accommodations towards comfort found in most of the courthouses in this country. Every lawyer who has ever had intrusted to his care, over any considerable period of years, the interests of property of any consequence or the lives or liberties of clients charged with serious offenses, will recall the anxiety and apprehension with which he has seen an important case go to the jury on a Saturday afternoon.

Confronted with this knowledge and apprehension, it is the emphasized duty on the part of the trial judge to see to it with every circumspection that, so far as within reasonable human power, nothing shall transpire, when a jury is in deliberation late Saturday, which shall operate to influence them, outside of what they themselves solely may think or do, to hasten to a verdict or to compromise their differences on any other consideration than the evidence and the law in the case. But, while this watchfulness is the more strictly required on Saturdays, the principle is one that appertains to every other judicial day of the term. It is within the sound judicial discretion of the trial judge as to how long he shall keep a jury confined for deliberation, and, because of his superior opportunities for judging in each case what is proper in that case, this discretion is seldom interfered with by an appellate court. And, this discretion and responsibility

being solely his own, no jury nor other person whomsoever has any business in any case to know how long they will be kept together; and it is therefore no surprise when it is found that in most of the cases, wherein reversals are had on the question we are now considering, the error has been, in some form, that the jury has ascertained either from the judge or from some other officer that the jury will be kept until, or discharged at, some particular fixed time.

Out of all this there has come the rule in most jurisdictions that the trial judge shall not mention how long he intends to keep the jury deliberating. See the comprehensive annotations to State v. Place, 11 Ann. Cas. 1129-1138. It can be sufficiently seen that this principle lies at the foundation of some, if not most, of the cases cited from our own court, because it applies whether the expression of an intention in that regard comes directly from the judge or whether from some officer whom the jury may reasonably suppose speaks as if having authority or knowledge from the judge. The rule as expressed is not only practicable, but it is sound from every standpoint. For instance, if there be a person on the jury who is there with the purpose to accomplish a certain result, a person commonly known as a "sinker," when the judge allows it to be known that the jury will be discharged at some reasonably short future time, the sinker will be the more certain to hold out until the fixed time shall arrive, whereas, on the other hand, if there be one or more who are holding out from the purest and most conscientious motives, and the judge fixes the time at a far distant hour or time, the conscientious juror or minority may at once surrender rather than submit to the ordeal of such a length of perseverance. But, when no time or intimation of time is given, the objectionable features just mentioned are thereby minimized so far as possible, and, indeed, may disappear altogether. And

further reasons for the rule will readily occur to the bench and bar.

In view of the frequency with which this question has arisen and the perplexities which have beset its consideration, we deem it important and requisite that a practicable and expedient rule shall be now prescribed for the removal of this question from the field of future controversy—a rule which of course must be within the existing principles of the law, but one nevertheless which shall be more definite and tangible in its statement than that apparent in many of the cases. We deduce the rule, and therefore now state it by way of resumé, as follows:

(a) It shall be within the sound judicial discretion of the trial judge as to how long he will keep the jury in deliberation, and this discretion will not be reviewed on appeal, unless there has been a clear abuse of it. And this discretion shall apply to deliberations carried over from Saturday until Monday the review on appeal in such a case, however, being the more watchful than in those relating to other periods.

(b) The length of time during which he will hold the jury in deliberation being the prerogative solely of the trial judge, and a matter concerning which it is absolutely nobody else's business, he shall not state to the jury, either expressly or by any act or language which reasonably construed will carry an implication, how long he intends to keep them; nor shall he make any such statement, outside of the hearing of the jury, which is carried to them by any other officer of the court.

It is further argued by appellant in effect that, since there can be no court without a judge, Turbeville v. State, 56 Miss. 793, and that a criminal trial is not completed until a verdict has been rendered, the act of the trial judge in this case in departing from the county wherein the court was in session operated to disssolve the court in so far as the trial then uncompleted was concerned, and, the trial having thereby been terminated,

there was no jurisdiction to receive and enter a verdict upon the return of the judge and the re-opening of court on the following Monday morning. This is a point that in the exact light in which it is presented does not appear to have been definitely made or considered in any of the cases heretofore before this court; but that it is a serious contention, and that there is authority for it, may be found by only a casual search, as, for instance, see Martin v. State, 10 Ga. App. 455, 73 S. E. 686; In re Patswald, 5 Okl. 789, 50 P. 139.

However, it is not here necessary to decide the point since the case must be reversed on the other assignment. We reserve the question until a decision upon it shall become necessary, adding only that, if the circuit judge in this case had refrained from looking at his watch and stating in the presence of the jury that he expected to go that evening to his home in another county to remain absent there until Monday morning, but, on the contrary, he had told the jury no more than that they should retire and continue to consider of their verdict, and that he would remain and continue to remain at all times within their call, and he had returned to his hotel and made himself at home there, the question upon which this case is reversed would never have arisen.

Reversed and remanded.