## CHARACTER *v.* STATE.

Division B.   June 11, 1951.

No. 38042  (53 So. (2d) 41)

**Dyer & Campbell,** for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

**Hall, J.**

Appellant, with two others, was indicted for the murder of James Washington. He was separately tried and convicted of manslaughter. All the parties are Negroes. The death of deceased was effected by a knife wound in the head which was inflicted at a point near the intersection of Percy and Starling Streets in the City of Greenville where a number of Negroes had assembled,

on the night of Labor Day in September 1931. Appellant escaped that night and was not apprehended and brought to trial until 1949.

According to the evidence for the prosecution deceased was on the street and doing nothing to provoke a difficulty and appellant ran up to him and struck him and started away as deceased went down to his knees; another Negro ran to deceased and exclaimed in a loud voice "Lord, Albert, you done cut this boy." The first assignment of error is the action of the court in overruling appellant's objection to this statement. The proof for the state is that the statement was made in a loud voice and within the hearing of appellant, and that appellant did not deny the accusation or make any response thereto, but fled from the scene. The rule is that where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or deny is relevant as tending to show his guilt, and the accusatory or incriminating statement is admissible, not as evidence of the truth of the facts stated, but to show accused's admission by silence. Silence alone, however, raises no legal presumption of guilt, and is not an equivalent to an admission of guilt, but its effect is for the jury and in connection with other facts and circumstances they may infer that the accused is guilty. When it is shown that the accused was in a position to hear the accusation, the question whether he did in fact hear it is for determination by the jury. 22 C. J. S., Criminal Law, Section 734, pp. 1258-1261; Anderson v. State, 171 Miss. 41, 47, 156 So. 645; Page v. State, 208 Miss. 347, 358, 44 So. (2d) 459; Thurmond v. State, Miss., 53 So. (2d) 44. We conclude, therefore, that there was no error in the admission of the statement.

The second assignment of error is directed against the granting of two instructions for the State. One told the jury that if they believe from the evidence beyond a reasonable doubt that the deceased was killed unlawfully, wilfully, feloniously, and with malice afore-

thought without authority of law, and that the defendant was present and unlawfully, wilfully and feloniously and with malice aforethought aided, assisted, and encouraged such killings, then the defendant is guilty of murder even though the jury may not believe from the evidence that the defendant actually struck the blow that resulted in the death of James Washington. The other instruction told the jury that if they believe from the evidence beyond a reasonable doubt that the deceased was killed with a deadly weapon without malice in the heat of passion without authority of law and not in necessary self-defense, and that the defendant was present and feloniously and without malice and without authority of law, and not in necessary self-defense, but in the heat of passion, aided, assisted and encouraged such killing, then the defendant is guilty of manslaughter, even though the jury may not believe from the evidence that the defendant actually struck the blow that resulted in the death of James Washington. In view of the fact that there had just been an argument between the deceased and the two persons who are codefendants with appellant and that, according to the State's proof, appellant was present and suggested an attack upon deceased, we find no error in these instructions.

It is contended finally that the conviction should be reversed because the trial judge coerced the jury into returning a verdict. This point was raised by a motion for a new trial which was overruled by the lower court. Evidence was taken on the motion but no bill of exceptions was taken. We, therefore, must accept as true the statement of the trial court as to the proceedings here brought under review. Gurley v. State, 101 Miss. 190, 57 So. 565. The statement of the trial judge is as follows:

"The Court's recollection is, and I feel pretty confident that my recollection is correct, the only time that the jury came in to report at the request of the Court was

the last time that they appeared—I don't recall whether they appeared two or three times. If it was two, they came in once on their own suggestion to report that they were unable to agree and I sent them back to the room for further deliberation. It was well along toward the end of the day, probably around six o'clock the best I can recall, when the Court sent for the jury and they came into the court room in front of the bar and the Court asked them if they had been able to reach a verdict and they said they had not been able to, and the Court then advised them in the words of the witness who just left the stand that he would have to leave them to the tender mercies of the sheriff during the night and he told them not to read the newspapers, that they might sit under the trees and if they wanted to go out to eat, to agree on where they were to eat, but the Court did not state he was going home or where he was going but he probably told them he would see them in the morning. At that junction, some member of the jury spoke up and asked if they might have additional time, either five or ten minutes additional time, I don't recall, and I told them yes that they might have that time. They then retired to consider their verdict and probably within fifteen minutes came in with a verdict of manslaughter. That is my recollection of the facts with regard to it, gentle-men.''

Cases have been reversed by this Court where the trial judge threatens to keep a jury locked up indefinitely for deliberation, or where he is holding court away from home and advises the jury that if they do not agree within a certain time he is going home; practically all the cases in the latter class occurred on a Saturday afternoon where there was either a statement or a clear implication that the jury would remain locked up over the week end. ██ ██ In the case now before us the incident occurred during the middle of the week. The trial began in the morning and the jury had retired to consider of its ver-

dict at approximately 2:30 p. m. The trial judge had remained in the courtroom for practically an hour beyond the regular time for recess to the next day, and we are of the opinion that appellant was not unduly prejudiced by the foregoing procedure and certainly there was no abuse of discretion by the trial judge. In the case of Wade v. State, 155 Miss. 648, 658, 124 So. 803, 806, 85 A. L. R. 1406, this Court, after reviewing numerous prior cases, laid down the following rules:

"(a) ▆▆ It shall be within the sound judicial discretion of the trial judge as to how long he will keep the jury in deliberation, and this discretion will not be reviewed on appeal, unless there has been a clear abuse of it. And this discretion shall apply to deliberations carried over from Saturday until Monday the review on appeal in such a case, however, being the more watchful than in those relating to other periods.

"(b) ▆▆ The length of time during which he will hold the jury in deliberation being the prerogative solely of the trial judge, and a matter concerning which it is absolutely nobody else's business, he shall not state to the jury, either expressly or by any act or language which reasonably construed will carry an implication, how long he intends to keep them; nor shall he make any such statement, outside of the hearing of the jury, which is carried to them by any other officer of the court."

The judgment of the trial court is accordingly affirmed.

Affirmed.