WETZEL *v.* WIGGINS, SUPT. MISSISSIPPI STATE
PENITENTIARY, et al.

No. 40176 February 6, 1956 85 So. 2d 469

*Howard A. McDonnell, Arnaud Lopez,* Biloxi, for appellant.

674 

*Joe T. Patterson,* Attorney General, Jackson, for appellee.

GILLESPIE, J.

William A. Wetzel, appellant, filed his petition for a writ of habeas corpus, wherein he alleged that he was being unlawfully confined in the Mississippi State Penitentiary by the Superintendent thereof, and the Sheriff of Sunflower County, Mississippi.

While appellant was serving a thirty-year term in the State Penitentiary for armed robbery, and on April 14, 1953, one of the convicts, Edgar G. (Sonny) McGraw, was killed. Appellant was convicted of the murder of McGraw and sentenced to death by electrocution. His conviction was affirmed by this Court. Wetzel v. State, 76 So. 2d 188; Wetzel v. State, 76 So. 2d 194; Wetzel v. State, 76 So. 2d 846. Thereafter, appellant perfected an appeal to the Supreme Court of the United States, and that Court denied the petition for writ of certiorari and dismissed the appeal on October 24, 1955. The date originally set for the execution, October 30, 1953, had passed pending the disposition of the several appeals and this Court thereafter set February 9, 1956 for the execution of appellant.

This habeas corpus petition was filed in the Circuit Court of Sunflower County on January 24, 1956, which was sixteen days prior to the scheduled execution. The circuit judge denied the writ. No answer was filed. Petitioner perfected this appeal, and by waiver of the Attorney General, the case was advanced and heard at the earliest possible time.

██ █ The petition alleges that appellant was sentenced under the provisions of the law prior to the enactment of House Bill 117, Laws of 1954, and House Bill 49, Laws Extraordinary Session of 1954, and that under the law in force at the time of the commission of the crime and at the time of sentence, appellant should have been confined in the county jail, or some county jail; that contrary to the law, appellant was removed to the maximum security cell block at the State penitentiary in Sunflower County, Mississippi, where he has since been confined in "condemned row" under the control, discipline, and regulations pertaining to the maximum security cell block in the State penitentiary, and that he was thereby restricted as to visits from friends and attorneys, conversations, communications, and otherwise; that there were other condemned men awaiting execution in "condemned row" and by reason of the ceaseless praying, conversations, and noises made by the others therein confined, the witnessing and hearing the preparation for the execution of other condemned men, and all the attendant reminders of the impending executions of such others, caused appellant great worry, mental anguish and apprehension; that nine men had been executed in the lethal gas chamber near his cell block, which was tantamount to appellant being executed nine times; that all of these circumstances to which appellant has been subjected was an increase in the severity of his punishment over what he would have suffered if he had been kept in some county jail pending execution; and that the law under which he was thus confined was ex post facto within the meaning of Section 10, Article 1 of the Constitution of the United States, and constituted a denial of the equal protection and due process of law guaranteed under the Fourteenth Amendment of the Constitution of the United States. For the purpose of considering this petition, we accept the facts as true, but not the conclusions, and we apply the facts alleged in the light of judicial and common knowledge.

■■ ■ An examination of the laws in effect at the time of the commission of the crime and at the time of conviction and sentence (Sections 2550-2557, Mississippi Code of 1942), and the laws enacted after petitioner's conviction (House Bill 117, Laws of 1954, and House Bill 49, Laws Extraordinary Session 1954), reveals that Sections 2550 and 2551, Mississippi Code of 1942, providing for the inflicting of death in capital cases by electrocution, and the manner in which, and the person charged with the duty of such execution, were not repealed by the later laws. Section 4, House Bill 117, Laws of 1954, provided, however, that the one sentenced prior to the passage of the new laws would have a choice of receiving the death sentence by electrocution or by means of the gas chamber, and if the condemned person made no choice at least five days before the date of execution, then the condemned will be put to death under the provisions of the law in force prior to the passage of the act. In the oral argument, petitioner's counsel conceded that death in the gas chamber is as humane as death by electrocution. But it will be observed that the new laws do not change the method of inflicting the death penalty save by choice of the condemned. Wherefore, as to the manner of inflicting the death penalty, the laws enacted in 1954 are not ex post facto. Indeed, the enactment of the 1954 laws providing for execution by lethal gas was prompted by humane motives, since it is generally conceded that death by means of lethal gas is more humane than death by electrocution. Section 4, House Bill 117, Laws of 1954, together with Section 2608, Mississippi Code of 1942, continue in operation the law providing for inflicting the death penalty by electrocution in cases where sentence was imposed prior to the passage of the new law when the condemned does not exercise a choice to receive the penalty under the new law.

The next question is whether appellant is unlawfully confined under an ex post facto law, and by reason therefor, entitled to escape the exaction of the death penalty.

Appellant largely relies on Medley's Case, 10 SCT 384, 33 L. Ed. 835, 134 U.S. 160. We think the case is not point. Medley committed the crime prior to the passage of the new law but was sentenced under the new law after outright repeal of the old law. The Court held the new law violated the constitutional prohibition against ex post facto laws because the new law substituted solitary confinement in the penitentiary for confinement in the county jail, and substituted a different manner of fixing the day of execution. Neither of these considerations are present in the case before us. Moreover, the Court found itself in a quandary as to what to do with Medley after finding that the law under which he was sentenced was ex post facto because of the increase in the severity of that law over the old law, and the old law had been repealed. We do not understand that the final order did more than order Medley released from the penitentiary to be dealt with by the Colorado authorities as the laws of that State might provide, and the Court stated that it did not know whether the Colorado court had any power to deal further with Medley.

As we understand the prayer of the writ here sought by appellant, he is asking that he be released from custody and relieved of the death penalty. He says in his brief that he should be remanded to the superintendent of the State penitentiary to continue serving his thirty-year sentence which he was serving at the time of McGraw's murder and when he was arrested and convicted. We hold that the writ should not issue for several reasons.

First: Appellant cannot complain that he has been confined in the maximum security cell block at the State penitentiary because he was already serving a thirty-year sentence for armed robbery, and his counsel says in his brief that he had about twenty-seven years yet to serve. The Laws of Mississippi provide for the superintendent of the penitentiary to have custody and

control of convicts, and he has full authority to make regulations for their safe keeping and discipline. The maximum security cell block is obviously the place where dangerous convicts are confined when the circumstances require it for the safety and security of the public and the convicts. Whether appellant had been convicted or acquitted in the case involving McGraw's killing, or if appellant had been given a life sentence, he could have been confined in the same circumstances and conditions complained of in his petition.

Second: Up until the argument of this case, which was nine days before the scheduled execution of appellant, he had not exercised a choice under the provisions of Section 4, House Bill 117, Laws of 1954, and several days remained within which he could choose to receive the death penalty by lethal gas or by electrocution. Of course, if the choice is not made, appellant will be electrocuted by the person and in the manner provided by Section 2550, et seq., Mississippi Code of 1942. In the event no choice is made, the only part of the 1954 laws applicable to appellant would be the confinement in the maximum security cell block at the State penitentiary pending execution, whether by lethal gas if he so chooses, or by electrocution if he makes no choice. It is noted that the law does not provide for solitary confinement in the maximum security cell block, and the allegations of the petition do not reveal any solitary confinement. In the case of Rooney v. North Dakota, 196 U.S. 319, the Supreme Court of the United States had this situation before them. In that case, the statute in force when the death sentence was pronounced differed from those in force when the crime was committed and when the verdict was rendered, in these particulars:

"1. By the later law, close confinement in the penitentiary for not less than six months and not more than nine months, after judgment and before execution, was substituted for confinement in the county jail for not

less than three months nor more than six months after judgment and before execution.

"2. By the later law, hanging, within an inclosure at the penitentiary by the warden or his deputy, was substituted for hanging by the sheriff within the yard of the jail of the county in which the conviction occurred.

"We are of opinion that in the particulars just mentioned the statute of 1903 is not repugnant to the constitutional provision declaring that no State shall pass an ex post facto law. It did not create a new offense nor aggravate or increase the enormity of the crime for the commission of which the accused was convicted, nor require the infliction upon the accused of any greater or more severe punishment than was prescribed by law at the time of the commission of the offense."

In the Rooney case, the Court further said:

"Again, it is said that the law in force when the crime was committed only required confinement, whereas the later statute required close confinement. But this difference of phraseology is not material. 'Confinement' and 'close confinement' equally mean such custody, and only such custody, as will safely secure the production of the body of the prisoner on the day appointed for his execution.

"The objection that the later law required the execution of the sentence of death to take place within the limits of the penitentiary rather than in the county jail, as provided in the previous statute, is without merit. However material the place of confinement may be in case of some crimes not involving life, the place of execution, when the punishment is death, within the limits of the State, is of no practical consequence to the criminal. On such a matter he is not entitled to be heard.

"The views we have expressed are in accord with those announced by the Supreme Court of North Dakota. State v. Rooney, 12 N. Dak. 144, 152.

"We are of opinion that the law of 1903 did not alter the situation to the material disadvantage of the criminal, and, therefore, was not ex post facto when applied to his case in the particulars mentioned.

"Judgment affirmed."

There was a greater difference between the old law and the new in the Rooney case, insofar as disadvantage to the condemned is concerned, than there is between the old and the new law with which we are concerned.

■■ This court recognizes the care we should exercise to guard against the denial of the rights of a condemned man, with particular reference to the constitutional interdiction against ex post facto laws. Confinement between the sentence of death and the execution of the death sentence is a part of punishment. Material changes not necessary to the public interest and the protection and safekeeping of the prisoner should not be wrought by a law passed after the commission of the crime. But the right and duty of the State in regard to such confinement should not be circumscribed to the extent that it is powerless to confine dangerous criminals safely, and thereby protect the public. We must assume that the legislature had sound reasons affecting safety and public welfare when it provided for the confinement of condemned men in the State penitentiary instead of county jails. The new law does not provide, in any substantial sense, a more severe or increased punishment by providing for confinement in the penitentiary.

■■ Third: We do not find that the difference in conditions as alleged in the petition over that which would have prevailed if appellant had been confined in a county jail is as great as indicated in the petition. If appellant had been confined in the Sunflower County jail, we know our own records that appellant would have been confined with several condemned men. It is within our knowledge that the Hinds County Jail is one of the

up to date and reasonably safe jails of the State, and prior to the construction of the maximum security cell block at the penitentiary, a number of condemned men were there confined. In any county jail that appellant might have been confined, he was likely to have been subjected to being confined with other condemned men.

▮▮ Fourth: The burden of appellant's complaint is directed to conditions to which he alleged he has been and is being subjected. Such are not required by the law under which he is confined. Under the prior law, he would have been confined in a county jail; in the later law he has been confined in the penitentiary. Nothing was changed except the place of confinement. The law does not direct that appellant be confined in the wing of the maximum security cell block known as ''condemned row.'' The Court does not administer the penitentiary nor the county jails. If the appellant had any complaint as to the manner in which he is being confined, or the treatment he is receiving, his remedy is not habeas corpus and under no event would it entitle appellant to be released and escape the punishment the law has imposed upon him.

▮▮ Whatever view is taken on any or all phases of this case we know of no law that warrants us in releasing appellant and directing that he be relieved of the sentence of death.

▮▮ Appellant's contention that he is being confined in violation of the equal protection and due process of law guarantees of the United States Constitution is not well taken. Cf. Rogers v. Peck, 199 U.S. 425.

Affirmed.

*Hall, Lee, Holmes, Arrington* and *Ethridge,* JJ., concur. *McGehee,* C.J., and *Roberds,* J., dissent. *Kyle,* J., took no part.

MCGEHEE, C. J., dissenting.

Any judgment of a trial court in a habeas corpus proceeding from which an appeal is necessary to prevent the illegal execution of the petitioner is an erroneous judgment. At the time of the homicide on April 14, 1953, for which the petitioner was convicted in September 1953 and sentenced to be executed by electrocution on October 30, 1953, it was the well settled law of this State and the uniform practice followed by the trial judges who presided over the circuit courts, to order that an accused who had been convicted of murder and sentenced to death should be placed in the custody of the sheriff of the county where the crime was committed and to be held in the county jail of such county, or of some other county designated by the trial judge, pending the execution of his death sentence. Section 2551, Code of 1942.

In the instant case the trial court in September 1953 sentenced the petitioner to death by electrocution in the manner then provided for by law. We must assume that the petitioner was placed in the county jail in the adjoining county of Coahoma under an order of the trial judge pending his execution, instead of the county jail of Sunflower County where he was tried and convicted. So far as we are advised that order is still in full force and effect. Nevertheless according to the allegations of the petition for the writ of habeas corpus herein, and which have not been denied, the petitioner was taken over his protest and against his will from the jail at Clarksdale in Coahoma County and carried to the state penitentiary in Sunflower County, and there placed in the maximum security cell block, and in the death row thereof, adjacent to the lethal gas chamber, both of which were installed under the provisions of Chapter 220 of the General Laws of 1954, as amended in particulars not here material by a subsequent act of the Extraordinary Session of 1954.

Section 4 of Chapter 220, Laws of 1954, provided among other things that ''in all cases where sentence of

death was imposed prior to the passage of this Act, the one so sentenced shall have the choice of receiving the death penalty under this Act or as provided by law prior to the date of the passage of this Act; provided, * * *, such choice is expressed to the sheriff of the county where the sentence was imposed at least five days before the date of execution, and in case such option is not so exercised within such time, then the condemned. will be put to death under the provisions of the state law which was in effect prior to the passage of this Act.'' No contention is made by the State that the petitioner is in error in contending that he has not at any time since his conviction and the affirmance thereof by this Court ever exercised the option to come under this lethal gas chamber act as provided for therein. As I understand, all of the eight judges who are participating in this decision are in agreement, there being no basis for any disagreement on the point, that the petitioner can not be executed in the lethal gas chamber under the provisions of Chapter 220, General Laws of 1954, in the absence of an exercise of his option to come under the provisions of such Act.

However, except for the filing of this petition for a writ of habeas corpus, there can be no denial that the penal authorities would execute the petitioner in the said lethal gas chamber on February 9, 1956. Under the ''death by electrocution act'' there was no authority for the electrocution of a condemned man to take place in the state penitentiary. And there is still no such authority. Under that Act the State had employed an executioner who received the sum of $100.00 for each execution and who carried the portable electric chair to whatever county the condemned man was alleged to have committed his crime, and there executed him. Whether the services of a trained and experienced executioner in putting men to death in an electric chair can be procured in time to execute the petitioner by electrocution at the county seat

of Sunflower County in Indianola, Mississippi, on February 9, 1956, I do not know. In my opinion the affirmance of the judgment of the trial court appealed from in this habeas corpus proceeding, and without any modification thereof, means that we are making it possible for his execution in whatever unskillful and haphazard manner that may be devised by whoever may be the local sheriff.

But transcending in importance the considerations hereinbefore mentioned is the fact that the petitioner has been, is being and will continue to be until the final disposition of this case, subjected to far greater punishment in the maximum security cell block, and in death row thereof, than would ordinarily have been inflicted upon him pending his execution had he remained in the county jail to which he had been assigned, and in which he had the lawful right to remain, under the law in force at the time of his alleged crime, his trial and conviction, and at the date fixed by the trial judge for his execution for October 30, 1953, and pending further appeals. Such was expressly so held in the case of Ex Parte Medley, 134 U. S. 160, 33 L. ed. 835, which has never been overruled but has been repeatedly cited by the Supreme Court of the United States as authority on the question at issue.

When we assume, as we are doing, that the allegations of the petition are true, since they were undenied and the offer to make proof in support thereof was refused, on the ground that the trial court was of the opinion that the allegations were insufficient to entitled the petitioner to relief, then a mere reading of the petition will disclose that the ordeal to which this petitioner has been subjected far exceeds the "solitary confinement" dealt with by the Supreme Court of the United States in the Medley case. There the Court reviewed the history of solitary confinement in England and in this country, its likelihood to produce insanity or result

in suicide, and expressly held that it was a greater punishment under the act of Colorado then being challenged as an *ex post facto* law, than the petitioner would have suffered had he remained in the county jail as provided for under the law in force at the time of his trial and conviction. In the Medley case the Court said, among other things, that:

"The prisoner was to be kept in the county jail under the control of the sheriff of the county, who was the officer charged with the execution of the sentence of the court. Solitary confinement was neither authorized by the former statute, nor was its practice in use in regard to prisoners awaiting the punishment of death." * * *

"Instead of confinement in the ordinary county prison of the place where he and his friends reside; where they may under the control of the sheriff, see him and visit him; where the sheriff and his attendants must see him; where his religious adviser and his legal counsel may often visit him without any hindrance of law on the subject, the convict is transferred to a place where imprisonment always implies disgrace, and which, as this court has judicially decided in Ex Parte Wilson, 114 U. S. 417 (29:89); Mackin v. United States, 117 U. S. 348 (29:909); Parkinson v. United States, 121 U. S. 281 (30:959), and United States v. De Walt, 128 U. S. 393 (32:485), is itself an infamous punishment, and is there to be kept in 'solitary confinement', the primary meaning of which phrase we have already explained. * * *

"The term *ex post facto* law, as found in the provision of the Constitution of the United States, to wit, that 'no State shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts', has been held to apply to criminal laws alone, and has been often the subject of construction in this court. Without making extracts from these decisions, it may be said that any law which was passed after the commission of the offense for which the party is being tried

is an *ex post facto* law, when it inflicts a greater punishment than the law annexed to the crime at the time it was committed (Calder v. Bull, 3 U. S. 3 Dall. 386, 390 (1:648, 649); Kring v. Missouri, 107 U. S. 221 (27:506); Fletcher v. Peck, 10 U. S. 6 Cranch 87 (3:162); or which alters the situation of the accused to his disadvantage; and that no one can be criminally punished in this country except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, or by some law passed afterwards by which the punishment is not increased.''

It has been the well settled rule in this state that when the constitutionality of a statute is challenged by a litigant in either a civil or criminal case, the first inquiry of the court is whether or not the statute is unconstitutional as being applied to such litigant. The Acts of 1954 are perhaps constitutional as applied to those committing crimes and being sentenced to death after the passage of those statutes, but in my opinion under the principle settled in the Medley case the Acts of 1954 are *ex post facto* laws as applied to this petitioner in the absence of of an election by him to come under the provision of such acts and are therefore violative of the Constitution of the United States.

But it was suggested in conference, though not mentioned in this habeas corpus proceeding except in one of the briefs of counsel, that the defendant superintendent of the state penitentiary had the right to hold the prisoner in custody at the state penitentiary during the remaining 27 years of a 30 year sentence that he was serving at the time that he is alleged to have committed the crime for which he has been sentenced to death. I am unable to agree that under that sentence they have the right to keep him in death row and subject him to the ordeal disclosed by the admitted allegations of the petition herein. In this case the petitioner was not taken from the jail at Clarksdale and carried to the peniten-

tiary for the purpose of serving out the 30 year sentence but was carried to the state penitentiary for the purpose of being executed.

Moreover, when the penal authorities aided and assisted in the procurement of the indictment and conviction in the circuit court of Sunflower County of this prisoner who was serving a term of years for an offense less than capital, they were without authority after his conviction and sentence to death to deny the jurisdiction of the state courts to determine where he should be confined pending the final disposition of his conviction for the capital offense. Then, too, the 30 year sentence of imprisonment has not been interposed by the defendants as a defense in an answer to the petition for a writ of habeas corpus herein. It is not to be supposed that the penal authorities placed the petitioner in death row in the maximum security cell block for any reason except what they conceived to be their right and authority under the provision of the Acts of 1954 hereinbefore mentioned, and for the sole purpose to await execution, and which are in my opinion, and with great deference, *ex post facto* laws as applied to this petitioner.

I think that the provision of Section 4, Chapter 220, Laws of 1954, giving to a condemned man who was tried, convicted and sentenced prior to the passage thereof, until five days prior to the execution within which to exercise his option to come under the provisions of the Act, was for the primary purpose of allowing sufficient time for a man who was sentenced to death prior to the passage of the Act to be transported from the county jail of the county of his conviction, however far removed from the state penitentiary, and placing him in the death row in time for his execution in the lethal gas chamber; that the legislature did not intend that an accused who had been convicted and sentenced to death prior to the Act, should come under the provisions thereof by estoppel, since the legislature clearly provided the

precise manner in which the option to come under the
provision of the Act could be exercised, and the legisla-
ture thereby enabled a prisoner to remain in the county
jail of the county where he was convicted or in some
other county jail designated by the trial judge, where
he could avoid being subjected to the ordeal set forth
in the allegations of this petition—a punishment in the
death row and for a long duration, not provided for
under the laws in force at the time of his trial, convic-
tion and sentence. I think that the question of whether
or not execution in a lethal gas chamber is more humane
than execution by electrocution, is not before us. This
petition deals with the greater punishment to which the
prisoner has been and is being subjected pending his
execution, as was true in the Medley case.

My great respect and personal esteem for the author
of the controlling opinion in a case which has doubtless
given him much concern, has produced reluctance on my
part to write this dissent, but after thinking over the
question involved since the conference on yesterday I am
unable to concur in the affirmance of the judgment ap-
pealed from, and without any modification thereof, and
feel it my duty to so state. I respectfully dissent from
the majority view.

ROBERDS, P. J., dissenting in part.

I agree that, under the circumstances, petitioner is
not prejudiced by the change in the method of being put
to death. This petition, however, involves the increase
in punishment suffered in the period awaiting execution.
Petitioner says that punishment has been greatly in-
creased by law and in actual administration since his
conviction, and that the law increasing such punishment
is ex post facto and void as to him. In other words, he
says that the punishment applicable to him from the
time of his sentence to the date of his execution is that
prescribed by the law in force at the time of his convic-

tion and not that provided for by another law enacted after his conviction. In that contention I think he is correct.

He was convicted of murder in Sunflower County, Mississippi, in September 1953. He was sentenced to death September 23, 1953. The circuit judge ordered that he be placed in the county jail at Clarksdale to await the time of his execution. The circuit judge had the power to do that. In fact that was the method provided by law. On January 1, 1955, he was removed from that jail and carried to the State Penitentiary to await his execution. He has been in the penitentiary since that time. Now, the circumstances awaiting his execution which would have surrounded him in jail at Clarksdale and those which did surround him in the penitentiary are set out in the petition. The allegations of the petition are sworn to by counsel for Wetzel as being ''true and correct.'' In addition, there is attached to the petition affidavits of individuals supporting the allegations, and in addition to that petitioner offered to produce oral proof before the circuit judge to substantiate such allegations, which permission was not granted. The State makes no answer to the petition; therefore, for purpose of this hearing we must treat the allegations of the petition as being true.

That petition avers, in substance, that when petitioner was transported to the penitentiary he was there incarcerated in what is called the ''Maximum Security Cell Block,'' ordinarily called death chamber or death row; that this block houses the lethal gas chamber and which chamber is adjacent to, adjoins and abuts said cell block; that he has been confined in said death cell with other persons condemned to death; that during the time he has been so incarcerated nine other persons have been executed in the lethal gas chamber; that these nine men have passed by and shaken hands with him in a farewell-goodbye; that the condemned row ''is in such close

proximity to the lethal gas chamber that he has heard the last prayers administered to the condemned in a row at the end of death row and adjoining the chamber itself * * *''; that he has heard the prayers and lamentations of the condemned before taking their last walk, as well as the administration to them of the last rites by the ministers of the gospel; that there has constantly fallen upon his ears the chants and spirituals of ''lost and forgotten men''; that he has been and is in hearing of the preparations which are made in the gas chamber preparatory to executions; the opening and closing of the doors to the gas chamber, and the noise of the fan which is operated after executions to remove the fumes from the chamber after death of the victims; and that he has heard the sound of the hearse coming for the bodies, the loading of the bodies into the hearse and the conversations which have taken place during those last activities. In other words, that he has, in effect, undergone nine executions.

Now, all of these assertions may not be true but we must accept them as true on this hearing.

The petition, affidavits, etc., further state, without answer thereto or denial thereof, that these conditions did not exist at the Clarksdale jail. Had he remained there he would not have undergone the ordeal created by them and set out above. In addition, the petition states that in that jail he was comfortable; that he was permitted to have visitors; to see his loved ones, and, so far as his physical surroundings and his contact with other persons, were concerned, he rested in peace and quiet.

The physical arrangements for confining prisoners in the penitentiary awaiting execution were provided by the law, and the ordeals which petitioner has undergone by confinement in the penitentiary have been in conformity with, and as a natural result of the administration of, the law, which law became effective December 31, 1954. Chapter 220, General Laws of Miss. 1954.

A statute is ex post facto "which aggravates the punishment after conviction." 15 Am. Jur., Criminal Law, Sec. 516. Conditions affecting the prisoner from the time of his conviction to the time of his execution are, of course, a part of his punishment. It seems so clear as not to require discussion that the treatment to be administered to condemned prisoners from date of conviction to date of death, provided for by the law of 1954, aggravated the treatment provided for by the law in force when petitioner was convicted. As to that interim treatment, the old and not the new law was applicable to the petitioner.

But it is said that Wetzel had been convicted in Jones County of robbery and sentenced to serve thirty years in the State Penitentiary and had served only three years of such punishment at the time he was convicted of murder — the crime involved here — and that this petition should be denied for that reason. In my judgment, the other crime is in nowise involved in this proceeding. Wetzel was not being confined in this case for another crime. He was being held and confined on the crime of murder. His petition nowhere mentions another crime. The first time that was injected into the proceeding was in the brief of the State. No issue is made up, or presented, as to that. We know nothing of the conditions surrounding the other case. For all we know, he may have been pardoned, or punishment suspended, as to any other case. The order of confinement of the circuit judge in this case placed Wetzel in the county jail until "* * * he shall be taken by the official operator of the state electric chair of the State of Mississippi and placed in said electric chair and there suffer death by electrocution." No one claims he was being confined in the State Penitentiary except for the purpose of being executed for the crime involved in this proceeding. He was not serving a term for another crime. The entire proceeding here is directed and confined to his conviction of mur-

der. The Sheriff of Sunflower County, in which county Wetzel was convicted of the crime here involved, is a party to this proceeding. The Sheriff of Jones County is not a party, as would need be if the proceeding had for its object the discharge of Wetzel from the penitentiary for a crime committed in Jones County.

In my opinion, the punishment of Wetzel by administration of gas will not contravene his legal rights but the interim punishment which has been, and will continue to be, administered to him does violate his legal rights. In my view we should order Wetzel redelivered to the Sheriff of Sunflower County for confinement in jail as the circuit judge may order, to await the time of his execution, which was the law when Wetzel was convicted.

## ON MOTION TO ADVANCE ON THE DOCKET

January 28, 1956 84 So. 2d 795

McGEHEE, C. J.

This is a habeas corpus proceeding here on appeal from the Circuit Court of Sunflower County, and this motion to advance the cause on the docket of this Court is made under the provisions of Section 1956, Code of 1942, entitling habeas corpus proceedings to be advanced on the docket as a matter of right.

In view of the fact that the petitioner William A. Wetzel has been sentenced to be put to death on February 9, 1956, and in view of the necessity of hearing his appeal from the judgment of the circuit court denying to him a writ of habeas corpus prior to the date fixed for the execution of his death sentence, or the postponing such date of execution, the Attorney General of the State has waived the three days notice of this motion to advance the setting of the case for hearing on appeal, and has agreed that the Court may entertain said motion and appeal at its convenience, and the Court has concluded to set the case for hearing on the appeal on Wednesday, February 1, 1956, in the Supreme Courtroom at 10

O'clock A. M., and of which fact the attorneys for the appellant William A. Wetzel and for the State of Mississippi have been duly notified.

The motion to advance is sustained and the habeas corpus proceeding is set for hearing on appeal at the time and place above stated.

Motion to advance sustained.

*Roberds, Hall, Lee, Arrington* and *Gillespie,* JJ., concur. *Kyle, Holmes* and *Ethridge,* JJ., having taken no part.