## JIM CLARK *v.* STATE.

[59 South. 887.]

CRIMINAL LAW. *Instructions. Trial of negro.*

Instructions in criminal cases which call attention to the color or race of the defendant should never be given, unless the state invokes a rule for the guidance of the jury which directs the attention of the jury to defendant's color and then the trial court should *sua sponte* rebuke the state's representative in the presence of the jury.

APPEAL from the circuit court of Marshall county. HON. H. K. MAHON, Judge.

Jim Clark was convicted of manslaughter and appeals. The facts are fully stated in the opinion of the court.

*W. A. Belk,* for appellant.

Assignment of error No. 1. In *Collins v. State,* 56 So. 527, the assistant district attorney used the following language: "This bad nigger killed a good nigger. The dead man was a white man's nigger and these bad niggers like to kill that kind. The only way you can break up this pistol toting among these niggers is to have a necktie party." Other language of the state's attorneys is also quoted in that case. The supreme court in reversing that case said, "It was the duty of the trial judge, *sua sponte,* to instruct the jury that such remarks were improper, and that they in their deliberations should not be goverened by any such statements made by the prosecuting officer." See page 528.

The court further said in this Collins case, "The simple fact that the trial judge, occupying as he does, a position of great power, fails to interpose when a damaging statement is made in his presence and before and to the twelve men who are trying the case is, *sub silentio,* an indorsement of the statement—at least a seeming

one." The court then says again, "Can any one say, under such circumstances, the defendant has had that which the Constitution guarantees to every man—a fair and impartial trial?"

Now note the language of the district attorney in the case at bar: "If the jury should turn this nigger loose because he caught his wife in a compromising attitude then there would be five hundred killings in Marshall county in less than ten days." By this argument the district attorney at once paraded before the minds of the jury the weakness of the negro race as to virtue and practically said to them that this weakness is a reason why in this case the defendant should be convicted, adding that they are so weak as to virtue that "if the jury should turn this nigger loose because his wife had been caught in a compromising attitude "then there would be five hundred killings in Marshall county in less than ten days."

He went out of the record to say this. It was done for effect and the effect was obtained. Surely the defendant ought not to be made to "carry so heavy a burden" as the lamented Justice CALHOON was wont to say: It is true he was but a "nigger" but in *Hampton* v. *State,* 88 Miss. 259, this court speaking through Judge CALHOON has said "Mulattoes, negroes, Malays, whites, millionaires, paupers, princes and kings in the courts of Mississippi are on precisely the same, exact, equal footing. All must be tried on facts and not on abuse. Only impartial trials can pass the Red Sea of this court without drowning." I insist that the court should have excluded the remarks of the district attorney from the jury even though defendant by his counsel had not objected. But the objection was reasonably made, and yet the court sat quietly by and allowed this argument made. We do insist that the defendant has not had a fair trial.

Assignment No. 2. In the said case of *Collins* v. *State,* 56 So. 528, this court said, "The appellant is a negro,

yet he is entitled to be tried by the same rules of law, and he must receive, while upon trial for his life, the same treatment as other persons.'' This is but another way of saying just what this court had already said in *Hampton* v. *State,* 88 Miss. 259. Yet, remarkable to tell, the trial court refused the defendant the two following charges, viz.: ''The court instructs the jury for the defendant that you should try him in this case exactly like you would a white man charged with the same offense under the same circumstances and should render the same kind of a verdict in the case that you would render a white man charged with the same offense.'' This was charge No. 1. It being refused then the following was drawn and asked and, more wonderful to tell, was likewise refused. ''The court instructs the jury for the defendant that in this case he is entitled to be tried by the same rules of evidence and law as if he were a white man.'' Charge No. 3. Can this or any other court imagine just upon what legal grounds these two charges were refused? I must confess that their refusal completely ''took all the starch'' out of defendant's counsel. It put him beyond where he was allowed to argue that this ''nigger,'' as the district attorney was allowed to call him in his argument hereinbefore referred to, had a right to be tried according to the law of the land. Now I press my question, ''Did my client have a fair trial?'' Was it fair to shut defendant's counsel out in that way and then let the state's counsel, over objection, on his closing argument, use the language above referred to? Surely not and surely this court will so decree.

*Claude Clayton,* assistant attorney-general, for the state.

Just why the learned trial judge refused instructions 1 and 3 is beyond my comprehension. It is the law as announced in these instructions, and has been the law since the formation of our commonwealth. A refusal by

the court to grant these instructions, in my opinion, denied the appellant that fair and impartial trial guaranteed to him by the Constitution of our state, which is the fundamental law upon which all statutory enactments and judicial interpretations must, of necessity, and of right, be based.

COOK, J., delivered the opinion of the court.

Appellant was indicted for murder and convicted of manslaughter. He testified in his own behalf that he saw deceased and his wife go into a barn, and that he went to the barn, peeped in, and discovered his wife and deceased in the act of sexual intercourse, that he shot at deceased six times with a pistol, and as deceased ran out of the barn and across the lot, having exhausted the capacity of his pistol, he shot and killed deceased with a Winchester rifle.

The main cause of complaint assigned here is the refusal of the court to give to the jury the following instructions:

(a) "The court instructs the jury for the defendant that you should try him in this case exactly like you would a white man charged with the same offense under the same circumstances, and should render the same kind of verdict in the case that you would render a white man charged with the same offense.

(b) "The court instructs the jury for the defendant that a man's home is his castle, and that it is his duty to protect and defend his home and his family against any and all traducers thereof, and, if he kill a man that is trying to debauch his home or any member of his family, then in trying him for the offense you should not forget the duty and obligation of the man which puts upon him the sacred duty of defending his home and his family.

(c)  ''The court instructs the jury for the defendant that in this case he is entitled to be tried by the same rules of evidence and law as if he were a white man.''

The race question and all of its vexations and perplexities should be dropped at the outer door of all courts of justice.  When a black man is on trial for his life, he, of course, should be tried by the same law, and convicted or acquitted according to the evidence and the law that would lead a fair and impartial jury to convict or acquit a white man.

One law and one justice, should be the maxim, whether the defendant is rich or poor, strong or weak, the descendant of kings or of paupers; and under no circumstances should the court permit the officers of the state to say or do anything which might in the remotest degree prejudice the jury against the defendant on account of race or color or social standing.  It must be remembered that the laws by which courts and juries must be governed are written in the statute books of the state, and we know of no statute or judicial decision expounding the law, whether the same is to be applied to a white man or a black man, which, by any stretch of the imagination, could have afforded any defense to appellant in the present case.  It is possible defendant was asking for an instruction according to the code of unwritten law, unknown to the courts, and which should be unknown to the juries.  An honest and impartial jury could have rendered no more merciful verdict, under the evidence in this case, than was rendered, and appellant should congratulate himself that he escaped with a conviction of the lessor crime, rather than the greater.

It is the practice to give instructions of similar import to those under discussion, but it should never be done, unless the state invokes a rule for the guidance of the jury which directs the attention of the jury to defendant's color, and then the trial court should *sua*

*sponte* rebuke the state's representative in the presence of the jury.

Nothing said and nothing omitted can afford an excuse for a reversal of this case.

*Affirmed.*