## Goldsby $v.$ State

No. 41547 October 3, 1960 123 So. 2d 429

November 10, 1960 124 So. 2d 297

*George N. Leighton,* Chicago, Ill.; *Rupert Ringold,* Winona, for appellant.

*Joe T. Patterson,* Atty. Gen., *G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, Robert Lee Goldsby, was indicted for murder in the Circuit Court of the Second Judicial District of Carroll County, Mississippi. His motion for a change of venue was sustained, and he was tried in the Circuit Court, First Judicial District of Hinds County, in December 1959, was convicted and sentenced to death. This case has a long and litigious history, and a summary of that background is necessary for an adequate understanding and analysis of the issues presented on this appeal.

On September 4, 1954, Mrs. Moselle McCorkle Nelms was killed by a gunshot wound received in the Second

Judicial District of Carroll County, and on the same day appellant Goldsby was arrested. On November 8 a grand jury in the Circuit Court of Carroll County returned an indictment charging him with the murder of Mrs. Nelms. In November 1954 he was tried and convicted in that County on that indictment, and was sentenced to death. That judgment was affirmed by this Court on March 28, 1955. Goldsby v. State, 226 Miss. 1, 78 So. 2d 762, cert. denied, 350 U. S. 925, 76 S. Ct. 216, 100 L. Ed. 809. Thereafter, on motion of the State a new date, February 24, 1956, was set for execution of the sentence. 226 Miss. 19, 84 So. 2d 528.

On February 21, 1956, appellant filed in this Court under Miss. Code 1942, Rec., Sec. 1992.5, a petition for a writ of error coram nobis, or, in the alternative, habeas corpus asserting newly discovered evidence and systematic exclusion of Negroes from jury service. The petition was denied. As to the second point, this Court held that appellant had failed to raise it in the trial court or in this Court in the appeal on the merits; that there was no evidence in the record to support that averment, or in the petition for the writ; and appellant had effectively waived raising at that late date this issue. 226 Miss. 20, 86 So. 2d 27; Cert. denied, 352 U. S. 944, 77 S. Ct. 266, 1 L. Ed. 239. Hence the Court set March 23, 1956, for date of execution of the sentence. Later the State filed a motion to set another date for execution of the death sentence, which was fixed for February 12, 1957. 226 Miss. 30, 91 So. 2d 75.

On January 29, 1957, appellant filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Mississippi, Greenville Division. The petition was denied by the District Judge as being insufficient on its face. Thereafter on February 11, 1957, the Chief Justice of the U. S. granted a stay of execution until petitioner "has had an opportunity to exhaust his federal rights in this proceeding." On

appeal from denial of habeas corpus, the U. S. Court of Appeals, 5th Circuit, held the averments in the application were sufficient to entitle applicant to a hearing, on the question of whether he adequately preserved during his murder trial the constitutional question that he was deprived of due process of law by a systematic exclusion of members of his, the Negro race, from grand and petit juries in Carroll County. U. S., ex rel., Goldsby v. Harpole, Supt. of Miss. State Penitentiary, 249 F. 2d 417 (CA 5th 1957); cert. denied, 361 U. S. 850, 80 S. Ct. 109, 4 L. Ed. 2d 89. The judgment of the District Court was reversed. The Court of Appeals stated the application should be determined after a full hearing, and the burden of proof was upon applicant in this collateral attack upon a judgment of the Mississippi courts.

Upon remand of Goldsby's petition, the District Judge, after a hearing, ruled that the evidence failed to show a systematic and willful exclusion of any member of the Negro race from jury service in Carroll County; that before and during the trial Goldsby was represented by able and competent counsel, but the issue was not raised in the State courts, and petitioner waived that question. See U. S., ex rel., Goldsby v. Harpole, 263 F. 2d 71, 75-76. After the District Judge refused to issue a certificate of probable cause, this Court, on motion of the State, again set a date for execution, May 29, 1958. Goldsby v. State, 102 So. 2d 215 (Miss. 1958). However, on May 27, 1958, the Chief Justice of the U. S. again granted a stay of execution.

The U. S. Court of Appeals thereafter granted a certificate of probable cause and, in the appeal from denial of the writ by the District, Court on January 16, 1959, the Court of Appeals held that Negroes had been systematically excluded from the grand jury and the petit jury in Carroll County, and the judgment of conviction was void. Applicant made out a prima facie

case to that effect, and the State did not adequately refute it. The Court of Appeals, 5th Circuit, in U. S., ex rel., Goldsby v. Harpole, 263 F. 2d 71, 84, cert. denied, 361 U. S. 838, 80 S. Ct. 58, 4 L. Ed. 2d 78, defined its decision as follows:

"Upon the present record, therefore, we make definitive holdings as follows: that Negroes were systematically excluded both from the grand jury which indicted the appellant and from the petit jury which convicted him; that the objection as to the petit jury was not effectively waived and, hence, that the judgment of conviction is unconstitutional, subject to collateral attack, and is declared to be void and of no effect; that the objection as to the grand jury was waived, and the appellant is now legally detained upon his indictment for murder, but that he is entitled to be tried within a reasonable time; that this Court retains jurisdiction for the entry of such further orders and judgments as may be necessary or proper.

"The Court expresses its present opinion that a period of eight months from and after the entry of this judgment or its final test by certiorari or otherwise will be sufficient to afford the State of Mississippi an opporunity to take the necessary steps to re-try the appellant, either upon the present indictment or upon a subsequent legal presentment for the same offense, as the State may elect. If the appellant has not been re-tried within such period, this Court will consider and decide whether or not he should be discharged upon this petition for habeas corpus.

"Any such re-trial must of course be before a jury from which Negroes have not been systematically excluded, or before some court or tribunal so constituted as not to violate his constitutional rights.

. . . . . . . .

"The judgment of the District Court is reversed and judgment here rendered in accordance with the holdings of this opinion.

"Reversed and rendered."

The December 1959 trial of Goldsby, from which resulting judgment this appeal was taken, took place after the above decision. Defendant Goldsby was retried under the 1954 indictment. His motion for change of venue was sustained, and the case transferred to the First Judicial District of Hinds County. A special venire was called. Appellant's counsel originally filed a motion to quash the special venire, on the ground of alleged systematic exclusion of Negroes from petit jury service, but appellant's counsel subsequently admitted he had no evidence of such exclusion, and withdrew this motion. He stated appellant had no objection to the method of obtaining the petit jury in the First District of Hinds County. In short, appellant does not raise any constitutional issue on this appeal of alleged systematic exclusion of Negroes from petit jury service in Hinds County, First District, where the second trial occurred.

 ■ Appellant contends that the verdict is against the overwhelming weight of the evidence; at the most it would warrant a verdict only of manslaughter rather than murder; and the evidence shows that he was acting in self-defense.

The testimony for the State and that for defendant were conflicting, and the questions of whether defendant was guilty of murder or manslaughter or was not guilty were issues for the jury. The testimony is substantially the same, with some variations, as in the first trial of this case. Cf. Goldsby v. State, 226 Miss. 1, 9-15, 78 So. 2d 762 (1955).

The two eyewitnesses who testified for the State, Dan Willis and B. S. Nelms, husband of the deceased, both testified that on the morning of September 4, 1954, ap-

pellant's car, driven by Robert Gilliam, turned abruptly and at a high rate of speed off the highway and onto the gravel apron of the Nelms' dairy bar and cafe, situated on the west side of U. S. Highway 51 about one and one-half miles north of Vaiden. Nelms asked them to leave because of the reckless driving of the automobile, which almost hit a gasoline gauge and threw gravel on the building and Willis' car. Goldsby and Gilliam changed seats, with Goldsby under the steering wheel. The occupants of the car did not leave, and, because Nelms was afraid of them, he put his pistol in his pocket and took a rubber hammer along when he walked out to the Goldsby car to ask the occupants again to leave. Nelms did not threaten Goldsby, but, when he approached close to the car, Goldsby shot him in the mouth, and when Nelms fell on his face, defendant shot him in the back. Mrs. Nelms, hearing the shots, ran from the cafe toward the car, without any weapon, with her hands in the air, and screamed to Goldsby to quit shooting her husband. Goldsby then turned his gun to the left upon her and shot her to death. She was about ten feet west of her husband. Four shots in all were fired. Appellant then drove off at a fast speed and was apprehended about forty miles away after a chase by police officers. Goldsby admitted to Deputy Sheriff Farmer that he shot Nelms three times and Mrs. Nelms one time. The motor on his car was running before and during the shooting.

On behalf of the defendant, his pastor in a St. Louis church testified as a character witness. Appellant admitted that Gilliam drove the car into the Nelms place "pretty fast and almost hit one of the gas pumps." He said that Nelms asked him to get off the property and cursed them, and he stated he would leave. While he tried to start the car, Nelms came around to the driver's side with the rubber hammer and the handle of his pistol visible in his pocket. Nelms swung at and hit him

with the hammer, and Goldsby reached and got his pistol out of the glove compartment. He was scared, and when he straightened up he started shooting and pulling off toward the highway. He shot four times, but did not see Nelms fall, and did not know that he had hit Mrs. Nelms, until the sheriff told him. He said he did not hear Mrs. Nelms scream or see her. He admitted that he drove the car away at a high rate of speed in a circuitous route.

In brief, the issues of fact were for the jury. It was amply warranted in finding that defendant committed an inexcusable and intentional homicide, and was guilty of murder beyond a reasonable doubt.

## II.

Defendant filed a motion to quash the indictment. It alleged that he is a Negro, and the grand jury which returned the indictment was constituted in a manner which "purposely and systematically excluded all persons who are of the same race as defendant;" and the grand jury selected in this manner denied defendant due process of law and equal protection of the laws, in violation of the Fourteenth Amendment, United States Constitution.

The circuit court sustained an objection by the State to testimony offered by appellant in support of these allegations. It held that defendant had been arraigned and pleaded not guilty to the indictment; that the Court of Appeals, 5th Circuit, had held as a matter of law that defendant had effectively waived any objections to the grand jury, was legally detained upon the 1954 indictment, and the State would try him upon it. Hence it overruled appellant's motion to quash the indictment. The circuit court was correct in holding that it, the appellant and the State were bound by the decision of the Court of Appeals holding the indictment to be valid and not subject to attack by appellant.

The decision in U. S., ex rel., Goldsby v. Harpole, 263 F. 2d 71, 84-85, made several "definitive holdings" pertinent to the issue of whether defendant could attack the indictment: (1) Negroes were systematically excluded from the grand and petit juries; (2) objection to the petit jury was not effectively waived, and the judgment of conviction was void; (3) "the objection as to the grand jury was waived, and the appellant is now legally detained upon his indictment for murder"; (4) appellant was entitled to be tried within a reasonable time, "either upon the present indictment or upon a subsequent legal presentment for the same offense, as the state may elect;" (5) judgment of the District Court denying discharge was reversed, and the Court of Appeals rendered judgment in accordance with its opinion, further providing that if appellant was not retried within eight months, the Court would then decide whether or not he should be finally discharged.

In summary, the Court of Appeals upheld a collateral attack upon the validity of the first judgment of conviction, but it expressly also held that the indictment was valid, and appellant could be retried upon it, or upon a new indictment "as the State may elect."

U. S. v. Harpole is the law of the case, insofar as it held the 1954 indictment to be valid, that appellant had effectively waived any objection to it, and could be retried upon it. The doctrine of the "law of the case" is akin to that of former adjudication, but is more limited in its application. It relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. 30A Am. Jur., Judgments, Sec. 331.

21 C. J. S., Courts, Sec. 195, states: ". . . whatever is once irrevocably established as the controlling legal rule of decision between the same parties in the same case continues to be the law of the case, whether correct on general principles or not, so long as the facts on which

such decision was predicated continue to be the facts of the case before the court.

". . . The doctrine of the law of the case is a rule of practice and not a principle of substantive law. It expresses the practice of the courts generally to refuse to reopen what has been previously decided in the same case, and is binding on every tribunal dealing with the case except one clothed with power to overrule and finally declare the law to be otherwise. It is founded on public policy, in the interests of orderly judicial procedure, and is of special significance as applied to questions of law as distinguished from decisions on questions of fact."

On review of a judgment of a state court, the U. S. Supreme Court has power not only to correct errors in the judgment entered in the State court, but to make such disposition of the case as justice may require. Its decision in a case brought before it from a state court is the binding law of the case. 36 C. J. S., Federal Courts, Sec. 281; Montgomery & Atlanta Motor Freight Lines v. Morris, 193 Miss. 211, 7 So. 2d 826, 8 So. 2d 502 (1942). Here the Court of Appeals upheld a collateral attack upon the judgment of conviction following appellant's first trial. The analogy to the foregoing rule is manifest and direct. The State followed the decision of the federal court and retried appellant in a manner consistent with its decision. It complied therein with issues adjudicated in the federal court's judgment. The Court of Appeal's decision became the fixed law of the case. Further proceedings in the second trial were required to be, and were, in conformity with it. 21 C. J. S., Courts, pp. 335-336; Cf. Atchison, T. & S. F. Ry Co. v. Railroad Commission of Cal. 209 Cal. 460, 288 P. 775 (1930), affirmed 283 U. S. 380, 51 S. Ct. 553, 75 L. Ed. 1128; Drainage Ditch No. 1 and 2 v. Chicago M. & St. P. Ry. Co., 57 S. D. 152, 231 N. W. 531, affirmed 58 S. D. 414, 236 N. W. 372 (1930).

In short, the decision of the Court of Appeals adjudicated the validity of the indictment under which appellant was retried, and his waiver of any objections to it. This decision on this question of law was as binding upon appellant, as the decision holding the petit jury to have been unconstitutionally organized was binding upon the State. The law of the case applied in these respects in the second trial.

Moreover, we think the doctrine of res judicata precluded appellant in the present trial from attacking the indictment. The judgment of the Court of Appeals was a conditional discharge of Goldsby on petition for writ of habeas corpus. Judgment was rendered in his favor holding his conviction to be void. His discharge was conditioned upon his retrial by the State under the same or another indictment within a reasonable time. The opinion in United States ex rel. Goldsby v. Harpole, 263 F. 2d at 84, footnote 35, cites the leading cases on a conditional discharge. Dowd v. U. S., ex rel., Cook, 340 U. S. 206, 71 S. Ct. 262, 95 L. Ed. 215 (1951); Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549 (1924); U. S., ex rel. Sheffield v. Waller, 126 F. Supp. 537, 546, (U. S. D. C., La., 1954), 224 F. 2d 280; see also Grandsinger v. Bovey, 153 F. Supp. 201, 240 (U. S. D. C., Neb., 1957), 253 Fed. 2d 917, cert. denied 357 U. S. 929, 78 S. Ct. 1373, 2 L. Ed. 2d 1371.

A discharge on a writ of habeas corpus by a court of competent jurisdiction conclusively settles and adjudicates matters necessarily and properly decided therein. 25 Am. Jur., Habeas Corpus, Sec. 157; 39 C. J. S., Habeas Corpus, Sec. 104. The effect of a conditional discharge on habeas corpus is substantially the same as an absolute discharge, and the rule of res judicata applies. The discharge was in fact granted, but it was conditioned upon the State taking further proper proceedings.

Appellant could not have filed another petition for habeas corpus in the federal courts after the decision of the Court of Appeals. He had already obtained the substantial relief which he sought. He was bound by that decision. Appellant is inconsistent in his contention that the federal judgment is valid and effective insofar as it benefits him, but not where it is unfavorable to him.

Appellant argues that there did not occur the concurrence of four conditions pertinent to application of res judicata, as applied in cases usually involving contracts and torts. See Brown v. Attala Drainage District No. 2, 185 Miss. 386, 395, 187 So. 529 (1939). None of the cases applying that rule deals with a collateral attack in the federal courts upon a judgment of conviction in a state court. They are not relevant here. Moreover, the State of Mississippi, although not formally designated as such, was in substance a real party to the habeas corpus proceedings. State v. Gordon, 105 Miss. 454, 62 So. 431 (1913). Harpole, the defendant, was an employee of the State and Superintendent of the State Penitentiary. He had custody of appellant under the judgment of the Circuit Court of Carroll County.

In short, the judgment of the Court of Appeals in U. S. v. Harpole was the law of the case and res judicata of the issue of the validity of the indictment and appellant's inability to contest it. The circuit court correctly overruled appellant's motion to quash the indictment.

### III.

H. L. Martin, who served on the jury, had been an employee of the Mississippi State Employment Service, under the civil service merit system, for six years. On voir dire, he said the fact that he worked for a state agency would not influence his judgment one way or the other, and, in substance, he could give appellant a fair and impartial trial.

Appellant asserts that his challenge for cause to this witness should have been sustained; that Martin as an employee of the State was per se disqualified. There is no evidence in the record to show that Martin had prejudged the case, or was unable to serve fairly and impartially as a juror. On the contrary, his testimony on voir dire shows that he was fair and impartial.

The general rule, which is applicable in Mississippi, is summarized in 31 Am. Jur., Jury, Sec. 204: "Under the common law a prospective juror is not disqualified per se merely because he is a government employee. Thus, as a general rule, in the absence of contrary statutory provisions, an officer or employee of the government or of a state is competent as a juror in actions wherein the government or the state is a party. It is now well settled, as a matter of federal law, that a juror cannot, merely because of employment by the government, be deemed to be biased against an accused in a criminal case. The constitutional right to trial by an impartial jury in a criminal prosecution is not infringed by a statute declaring employees of the government and recipients of pensions or gratuities from the government to be eligible as jurors if otherwise qualified. . . .

"The defendant may, of course, show actual bias of a government employee called upon to serve as a juror."

The annotation in 94 L. Ed. 203, 204-206 discusses and summarizes the rule in the federal courts, to the effect that a juror cannot, merely because of employment by the federal government, be deemed to be biased against an accused in a criminal case.

The cases holding a juror subject to challenge for cause where he is an employee of one of the parties to a civil action are not in point. Hubbard v. Rutledge, 57 Miss. 7, (1879); Louisville N. O. and T. Railway Co. v. Mask, 64 Miss. 738 (1887). Berbette v. State, 109 Miss. 94, 67 So. 853 (1915), and Jackson v. Board of Mayor and Aldermen of the Town of Port Gibson, 146 Miss.

696, 111 So. 828 (1927), also cited by appellant, are not pertinent.

An employee of the state government is not disqualified as a juror in a criminal case merely because he is a government employee, ▮▮ but of course the defendant may show actual bias. Defendant did not do that here. The record reflects the contrary. Hence there was no error in overruling appellant's challenge for cause to H. L. Martin as a juror.

## IV.

Miss. Code 1942, Rec., Sec. 2521, provides: "Only two counsel for the state, one of whom shall be the district attorney, and two for the defendant, shall be heard in criminal cases, unless the court, for special reason, in its discretion, see fit to relax this rule."

Before the trial defendant's counsel filed a motion based upon Sec. 2521, which asked the court to limit the number of counsel for the state to two, one of whom shall be the district attorney, and more particularly to exclude as counsel for the prosecution Hon. Ross R. Barnett. See also Code Secs. 3920-2 and 3927. It averred that the district attorney was not absent or disqualified to prosecute; that Barnett was Governor-Elect of Mississippi; that to allow him to appear as counsel for the prosecution would deprive defendant of due process of law and equal protection of the laws under the Fourteenth Amendment; that he had never been appointed by the circuit court to serve in the place of the district attorney; and that his appearance as "the most prominent member of the Bar of this state who has been elected" recently to serve as governor would have the effect of subjecting defendant to a trial devoid of fairness and impartiality, as contemplated by the constitution of this state and the Fourteenth Amendment, U. S. Constitution.

Bryant Nelms, husband of the deceased, employed Barnett as special prosecutor to assist the district attorney in 1954. His employment was to prosecute the case to its final conclusion, and Nelms objected to his withdrawal from the case. He was one of the prosecuting attorneys in the first trial, November 1954. The circuit court overruled the motion. Appellant contends this action was reversible error.

Counsel for the state participating in various respects in the trial were the District Attorney of the Fifth Circuit Court District, which includes Carroll County, where the crime was committed, and the grand jury which returned the indictment was empaneled; the District Attorney and Assistant District Attorney of the Seventh Circuit Court District, which includes Hinds County where the case was tried; the Attorney General of the State of Mississippi, who had participated in many previous hearings of the case; and Barnett, who was employed by Nelms as special prosecutor.

 ██ This Court takes judicial notice of the fact that it has been the custom in this State from time immemorial for individuals interested in the punishment of an accused, such as the husband of the deceased, to employ a special prosecutor in whom they have particular confidence to assist the State's attorney in the prosecution. This practice has been uniformly permissible in this State. Edwards v. State, 47 Miss. 581, 587 (1873) ; Carlisle v. State, 73 Miss. 387, 394-395 (1895). It represents a common law practice, and that of a large majority of the states of the Union.

The rule, with citations of numerous authorities supporting it, is summarized in 42 Am. Jur., Prosecuting Attorneys, Sec. 10: "At common law, criminal prosecutions were generally carried on by individuals interested in the punishment of the accused, and not by the public. The private prosecutor employed his own counsel, had the indictment found and the case laid before

the grand jury, and took charge of the trial before the petit jury. While under the present practice officers are appointed or elected for the express purpose of managing criminal business, the old practice survives in most jurisdictions to the extent that counsel employed by the complaining witness or by other persons desirous of a conviction are permitted to assist the prosecuting attorney in the conduct of the prosecution, and as a general rule no valid objection can be raised by the accused to allowing the prosecuting attorney to have the assistance of private members of the bar.''

 ██ Moreover, the employment of a special prosecutor by the husband of the deceased and his participation in the trial of the case, in addition to the several official legal representatives of the state, was not a violation of Code Sec. 2521. The restriction there is that only two counsel for the state ''shall be heard'', which quoted phrase is confined to arguments of counsel for the state after the evidence has been presented to the jury. The trial court limited the argument of counsel to two counsel for the State and two for the defendant. Moreover, Sec. 2521 places the ultimate decision in the discretion of the trial court, and there is no evidence which indicates any abuse of that discretion.

 ██ Appellant argues that the totality of the circumstances relevant to Mr. Barnett's participation as special prosecutor shows that it was unfair for him to so serve, but we have carefully examined the record in this case, and it is manifest that defendant received a fair and impartial trial, at which he was ably represented by two attorneys. At the time of the trial in December 1959, Barnett was the Governor-Elect of the State, taking office in January 1960. However, as previously stated, Nelms employed him in September 1954, and, at the time of the first trial in November 1954, he had recently lost a race for the governorship.

A recent decision pertinent to this question is Allegrezza v. State, 120 So. 2d 780 (Miss. 1960), where the defendant was charged with murder and convicted of manslaughter. The district attorney, Sullivan, was a popular candidate for Governor at that time, from the county in which the homicide prosecution was conducted on a change of venue. There was a great deal of public interest on behalf of his campaign for Governor. In overruling this assignment of error, this Court said: ''It is not unusual for the district attorney to be a popular and well-liked man in his county and in his district. If the popularity of the district attorney should be held to be a ground for reversal on the theory that such popularity gives him undue influence with the jury, then the courts could not operate when the prosecuting attorney holds the esteem of the people of the county. It would lead to absurd results if the courts must first determine the popularity of the attorneys before a case may be tried. We are of the opinion that there is no merit in this contention.''

The only difference in the present case from *Allegrezza* is that Barnett was not the district attorney, but a special prosecutor, employed by the husband of the deceased five years previously in the early stages of this litigation, and had had the good fortune recently to become the Govenor-Elect of the State. However, weighing these circumstances against all the facts, including his employment many years before by Nelms and the eminently fair conduct of the trial by the circuit judge, we think it is manifest that the motion of defendant to limit the State to two prosecuting attorneys and to exclude Mr. Barnett had no merit. *A fortiori,* we cannot say that the circuit judge abused the exercise of his sound discretion in overruling the motion. Cf. Bowers, The Judicial Discretion of Trial Courts (1931), p. 209.

## V.

■■ ■ There was no error in the refusal by the trial court of the instruction requested by appellant to limit the charge of manslaughter. The testimony was in conflict, and, if the jury believed, as it apparently did, the evidence for the State, it was amply warranted in finding appellant guilty of murder.

■■ ■ The trial judge refused appellant the following instruction: "It is the duty of the jury to consider the defendant's case as if he were a white man, for the law is the same as to both white and colored men, there being no distinction in principle in respect to color." Its refusal was correct. It is wholly improper in this state to call attention to the race of a defendant. It is the duty of the trial court to see that an accused receives a fair and impartial trial without any reference to his race. The circuit court here did that. Clark v. State, 102 Miss. 768, 59 So. 887 (1912) is in point. Appellant, convicted of manslaughter, was refused two instructions which stated that the jury should try defendant "exactly like you would a white man charged with the same offense" and should render a verdict accordingly; and defendant was "entitled to be tried by the same rules of evidence and law as if he were a white man." The court stated that the race question "and all of its vexations and perplexities should be dropped at the outer door of all courts of justice;" that one system of law and justice should pertain to all citizens. *Clark* condemned instructions of this type as wholly improper. This is an established rule of practice in this State, and there was no error in refusal of the instruction.

1 Alexander, Miss. Jury Instructions (1953), Sec. 156, p. 76, summarizes the Mississippi rule in this respect: "Inasmuch as the jury is chosen because at the outset impartial, its judgment may not be swayed by instructions which import prejudice. It is error to emphasize that one of the parties, or some of the witnesses, are of

a certain race, or to designate a certain sale as 'pretended', or to refer to certain physical defects of an accused.''

Appellant cites Illinois cases which hold that a defendant is entitled to obtain such an instruction. People v. Galloway, 7 Ill. 2d 527, 131 N. E. 2d 474 (1956). However, the Illinois rule is contrary to that established in Mississippi in Clark v. State. The propriety of such an instruction is purely a matter of state procedural law and practice. All of the instructions given to the jury by the court were impartial and objective. The instruction refused would import prejudice against defendant where the totality of all circumstances in the record negative it.

## VI.

Appellant attended public schools in Jackson, Mississippi, for awhile, and moved to St. Louis in 1947. He offered as a character witness a minister of a church in St. Louis, to which he belonged, who testified that Goldsby was a member of his church, and his general reputation in that community for peace and violence was good. Appellant put his character in issue, and the State had the right to interrogate him and offer evidence concerning prior convictions, if any. Miss. Code 1942, Rec., Sec. 1693. Defendant denied that he had ever been convicted of any crimes or misdemeanors.

In rebuttal for the State, M. B. Pierce testified that he was Chief of Detectives and Assistant Chief of Police of the Jackson Police Department, since 1950, was familiar with the method of keeping the records, and was custodian of them. When Pierce was asked whether they reflected a conviction in the City Court of Robert Lee Goldsby, defendant's counsel objected, unless the records containing that name showed that he was one and the same as appellant. The district attorney stated he would try to clear that up, and Pierce further testified as to the descriptive background of the subject in those records,

giving the first name of the mother and father of the individual, race and date of birth, and street address. The objection was overruled. Subsequently Pierce testified that in 1942 Robert Lee Goldsby was convicted of assault in the city court and fined $15. In 1947 Robert Lee Goldsby was convicted of abusive language and resisting arrest, on two affidavits, a fine of $50 and an appeal to the county court. Thereafter Joe D. Sharp, deputy circuit clerk of Hinds County, whose office maintains the records of the county court, testified that the county court's records reflected the 1947 conviction, an appeal, and a writ of procedendo issued. This testimony showed that the appeal was not prosecuted, and the writ of procendo, which was issued by the county court to the city, made the conviction final.

Appellant argues that admission of this evidence concerning two prior convictions of Robert Lee Goldsby was prejudicial error. We cannot agree. He says there is no evidence that the person described in these records, Robert Lee Goldsby, with the detailed facts identifying that individual, was the same person on trial in the instant case. This attenuated argument disregards the descriptive data given in identifying the convict. Moreover, it is a well established rule of evidence and practice in this State that the identity of name of the defendant and the person previously convicted is prima facie evidence of identity of person, and, in the absence of rebutting testimony, supports a finding of such identity. McGowan v. State, 200 Miss. 270, 281, 25 So. 2d 131, 26 So. 2d 70 (1946). The State more than complied with this rule by introducing detailed descriptive data of the person previously convicted. Moreover, appellant had the opportunity, if he desired, to rebut the evidence as to identity, but made no tender to that effect. Under all of the circumstances, we cannot find any abuse of discretion by the trial judge, and

in fact are of the opinion that his action overruling appellant's objection was correct.

## VII.

Appellant contends that the trial court erred in admitting into evidence testimony as to an implied admission by silence by Goldsby, and testimony as to a confession by him.

Sheriff Richard F. Byrd of Holmes County was notified of the killing, and was requested to stop a car answering the description of the one owned by appellant. He set up road blocks, and appellant's car came out of another road and onto Highway 17 about a quarter of a mile north of the city limits of Lexington. He and Deputy Sheriff Farmer pursued appellant's car for four or five miles at a high rate of speed, with his police siren and red blinker lights going. Since they were unable to pass it, Farmer shot at the rear tire of appellant's car, and it pulled over to the side of the highway. Goldsby got out first, and Sheriff Byrd put him under arrest. Gilliam got out next and then the three women and the little girl.

While the jury was retired from the courtroom, the sheriff qualified the evidence as to an implied admission by testimony which amply showed that statements made by Gilliam at the scene were free and voluntary, as well as Goldsby's circumstances, and that no coercion was used upon him or appellant. There was no evidence to the contrary. With the jury back in the courtroom, Byrd testified that Gilliam tried to run away, and Deputy Farmer told him to come back, which he did. Gilliam was standing about 12 to 15 feet from Goldsby when, pointing his finger at Goldsby, Gilliam said that he was the man who shot "that white man and that white lady at Vaiden." The sheriff testified that Goldsby did not deny this, but was silent.

Deputy Sheriff I. C. Farmer, who was with Sheriff Byrd when appellant was arrested, also testified as to Goldsby's silence after Gilliam's accusatory statement.

After a preliminary hearing ended, the court overruled an objection to Farmer's testimony as to Goldsby's oral confession. He said he turned to Goldsby and asked him how many times he shot that man at Vaiden. Goldsby replied that he shot him three times and shot the lady one time. Farmer said it was four or five minutes after appellant's car stopped before he made that statement.

Under the circumstances, reflected by the record, we think the circuit court was correct in admitting into evidence the testimony of Sheriff Byrd and Deputy Sheriff Farmer as to Gilliam's accusation made in Goldsby's presence, and Goldsby's silence. It was properly subject to appraisal and consideration by the jury, under the rule of evidence of an implied admission by silence.

The doctrine that accusatory statements made in the presence and hearing of the defendant are admissible as confessions implied from silence is well-established as an exception to the hearsay rule. All circumstances must be taken into account, involving matters affecting the propriety or occasion for denial, and the question whether a normal reaction would evoke protest. The issue whether a reply is indicated or called for is for the court, but it is for the jury to decide whether the statement was heard and understood. The accusatory statement is admissible not as proof of a fact asserted, but as a predicate to the showing of the reaction of the accused to it. The conduct of the accused becomes thereby original evidence. Thurmond v. State, 212 Miss. 36, 42-43, 53 So. 2d 44 (1951); Character v. State, 212 Miss. 30, 53 So. 2d 41 (1951); Jones v. State, 228 Miss. 296, 302-303, 87 So. 2d 573 (1956), cert. denied, 352 U. S. 937, 77 S. Ct. 236, 1 L. Ed. 2d 167; cf.

Robinson v. State, 235 Miss. 100, 108 So. 2d 583 (1959). The admissibility of the evidence is for the court, and we think the circuit court was amply warranted in holding the evidence to be admissible. Thurmond v. State, supra. It then became a question for the jury to decide whether the statement was heard and understood.

■ ■ Appellant contends that all of the circumstances at the time of the accusatory statement by Gilliam, and Goldsby's confession to Farmer, indicate that they were involuntary; and that their admission in evidence violated the due process clauses of the federal and state constitutions. However, the only evidence before the court established the voluntary nature of the accusation and silence, and appellant's oral confession to Farmer. Appellant offered no evidence to indicate their involuntariness. He relies solely upon the circumstances that appellant and Gilliam had just been arrested when these events occurred, and that Byrd had his pistol in his holster and Farmer had a rifle in hand, pointed downward. Naturally, officers who have chased and captured an alleged felon would be expected to have weapons in their possession. But the evidence shows that they did not use the weapons after the car was stopped, or threaten Gilliam or appellant in any way. The appellant's statement, and Gilliam's accusation and appellant's silence, were under circumstances wholly voluntary. It is a well-established rule that the mere fact that an officer was armed at the time a confession or statement was made by an accused does not of itself constitute duress rendering such statements involuntary and inadmissible. Dixon v. State, 164 Miss. 540, 549-550, 143 So. 855 (1932); Watson v. State, 166 Miss. 194, 212, 146 So. 122 (1933).

■ ■ The circuit court excluded any evidence as to an alleged confession by appellant at the Holmes County jail. When the State's counsel asked Sheriff Byrd as to Goldsby's response to the accusation of Gilliam, the

witness apparently became confused, and stated that Goldsby admitted killing Mrs. Nelms, while he was at the Holmes County jail. He was then asked about what happened on the road, and he responded properly to the question. Appellant's counsel then objected. The court correctly sustained the objection to the witness' confused statement. It instructed the jury that it would not consider what the sheriff said concerning the alleged statement of Goldsby at the jail. He admonished the jury to ignore that. That was all the court could do, and manifestly in his sound discretion the trial judge considered that sufficient. Appellant did not make a motion for a mistrial, and his failure to do so waived whatever error occurred in Sheriff Byrd's non-responsive answer to the question of State's counsel.

The general rule in this respect is summarized in Redwine v. State, 149 Miss. 741, 115 So. 889 (1928): "The alleged misconduct of the district attorney in his argument of the case before the jury cannot be availed of by the appellant in this Court, because he failed to exhaust his remedy in the trial court. The trial court sustained appellant's objection to the alleged misconduct of the district attorney in his argument before the jury, and instructed the jury not to consider that part of the district attorney's argument. If appellant conceived that his rights were prejudiced by such an argument, and that such prejudice had not been removed by the ruling of the court and the instruction of the court to the jury to disregard same, he should have moved the court for a mistrial and a new trial before another jury. Cotton v. State, 135 Miss. 792, 100 So. 383; Allen v. State, (Miss.), 114 So. 352." To the same effect are Ransom v. State, 149 Miss. 262, 266-267, 115 So. 208 (1928); Thompson v. State, 220 Miss. 200, 70 So. 2d 341 (1954); Wetzel v. State, 225 Miss. 450, 475-476, 76 So. 2d 188 (1954).

We think the circuit judge properly handled this unanticipated response and adequately protected appel-

lant's rights in that respect; and further, that appellant's failure to move for a mistrial waived any further objections he may have had to the nonresponsive answer.

Moreover, the appellant's motion for a new trial, Items 4-14, were in such general and nonspecific terms as not to raise this issue on that motion, so he again waived any objections to it.

The judgment of the circuit court is therefore affirmed, and the 15th day of November, 1960, is hereby set for date of execution of the death sentence in the manner provided by law.

Affirmed, and execution of death sentence set for the 15th day of November, 1960.

All Justices concur.

## ON PETITIONS FOR STAY OF EXECUTION AND APPEAL IN FORMA PAUPERIS

Appellant Goldsby was convicted of murder, and sentenced to the death penalty. On October 3, 1960, this Court affirmed that conviction, and set the date for execution of the death sentence for November 15, 1960. Goldsby v. State, 123 So. 2d 429.

On November 5, 1960, appellant by his attorney filed herein (1) a petition for appeal *in forma pauperis* and for stay of execution, in connection with a petition for writ of certiorari he proposes to file in the Supreme Court of the United States; and (2) a petition for leave to appeal *in forma pauperis*. The State filed an answer to these petitions, asserting that they should be denied, and appellant replied to the answer. Since the date for execution of sentence is next Tuesday, November 15, 1960, the Chief Justice called an *in banc* conference of all of the Judges of this Court for today, Thursday, November 10. The Court has considered these petitions, and concludes they should be denied.

28 USCA Sec. 2101(f) provides in part: "In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court, and may be conditioned on the giving of security, . . . ."

■ ■ Whether a judge of a State Supreme Court, or the Court itself, should grant a stay of execution is within his or its sound discretion. There is no absolute right to a stay. Our opinion is 123 So. 2d 429 recounts at some length the almost six years of the long and litigous history of this case. Appellant's guilt is clear and evident. He has received every safeguard of due process of law and equal protection of the laws under the state and federal constitutions. ■ ■ The question is whether there is any sufficiently debatable issue pertaining to a substantial federal question which would warrant this Court in staying execution, until the United States Supreme Court has passed upon appellant's petition for certiorari, not yet filed.

Rule 19 of the United States Supreme Court is entitled "Considerations governing review on certiorari". It provides in part as follows: "1. A review on writ of certiorari is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor. The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered:

"(a) Where a state court has decided a federal question of substance not theretofore determined by this court, or has decided it in a way probably not in accord with applicable decisions of this court."

██ ██ We do not think that appellant can assert any ground conceivably coming within the quoted standards of Rule 19. The assignments of error argued by appellant in his appeal to this Court were dealt with seriatim and in some detail in the opinion in 123 So. 2d 429. None of them in our opinion present a federal question of substance not theretofore determined by the U. S. Supreme Court. None of those points were decided in a way probably not in accord with applicable decisions of the federal court. One of the petitions considered herein indicates that appellant is relying principally if not exclusively upon the contention that members of the Negro race were systematically excluded from the grand jury which returned the indictment. That matter was considered at length in Point II of our opinion. The United States Court of Appeals, in U. S. ex rel Goldsby v. Harpole, 263 F. 2d 71, expressly held that objections to the grand jury were waived by appellant, and he was legally detained and could be retried upon the original indictment, upon which he was tried and convicted. Appellee Harpole's petition for writ of certiorari from that decision was denied. 361 U. S. 838, 80 S. Ct. 58, 4 L. Ed. 2d 78.

██ ██ There is no substantial federal question raised in this case, nor are any of the matters in it sufficiently debatable to lead to the belief that at least four members of the United States Supreme Court would vote to grant certiorari. Edwards v. People of the State of N. Y., 352 U. S. 804, 76 S. Ct. 1058, 1 L. Ed. 2d 37 (1956); Rosenberg v. U. S., 346 U. S. 271, 73 S. Ct. 1152, 97 L. Ed. 1607; Reconsideration denied, 346 U. S. 324, 73 S. Ct. 1178, 97 L. Ed. 1634 (1953); cf. Richardson v. People of State of N. Y., 78 S. Ct. 1188, 2 L. Ed. 2d 1359 (1958); Eckwerth v. People of the State of New York, 359 U. S. 309, 79 S. Ct. 755, 894 (1959).

This Court has considered the propriety of stays of execution in Wetzel v. State, 225 Miss. 450, 489, 76 So.

2d 188, 846 (1955); on habeas corpus, 226 Miss. 671, 85 So. 2d 469 (1956); and in Sorber v. Wiggins, 226 Miss. 693, 85 So. 2d 479 (1956); cert. den., 351 U. S. 975, 76 S. Ct. 1041, 100 L. Ed. 1492; rehearing denied 352 U. S. 861, 77 S. Ct. 29, 1 L. Ed. 2d 72. In *Sorber,* 226 Miss. 695, Mr. Justice Gillespie, specially concurring, observed that a stay should be granted where the judge "is of the opinion that a substantial federal question is involved". On the other hand, "If the appeal is frivolous, and if the judge who has the matter under consideration is of the opinion that the appeal is simply to delay the execution, the stay should be denied."

Realizing the heavy responsibility which rests upon us when a life is at stake, we have considered most carefully the petitions. We can find no substantial federal question, nor any matter which is fairly debatable in that respect. We conclude that there is no substance to petitioner's efforts to obtain a further review of his conviction, and the petitions should be denied. This Court has the responsibility to supervise the administration of criminal justice in the state courts, and to see that convictions are in accord with the requirements and limitations of the state and federal constitutions. This includes the duty to see that the laws are not only enforced fairly, but also that the penalties provided by the laws are enforced with a reasonable degree of promptness and certainty. The issuance of a stay in this case would promise many more months of litigation in a case which has otherwise run its full course, in proceedings in full accord with state laws and the federal and state constitutions, and in compliance with the judgment of the United States Court of Appeals, Fifth Circuit, in U. S. ex rel Goldsby v. Harpole, 263 F. 2d 71. The petitions are therefore denied. The judgment of this Court remains unchanged.

Petitions for stay of execution pending petition for writ of certiorari, and for appeal *in forma pauperis* are denied.

All Justices concur.

## ON MOTION TO SET NEW DATE FOR EXECUTION

McGEHEE, C. J.

On September 4, 1954, the appellant, Robert Lee Goldsby, killed an murdered Mrs. Moselle McCorkle Nelms near Vaiden in Carroll County, Mississippi. He was indicted, tried and convicted for the said crime and given the death sentence. On appeal to this Court the verdict and judgment of the Circuit Court of Carroll County was affirmed on March 28, 1955. Goldsby v. State, 226 Miss. 1, 78 So. 2d 762. Certiorari was denied by the United States Supreme Court as shown in 350 U. S. 925, 76 S. Ct. 216, 100 L. Ed. 809. Thereafter a new date for the execution of the death sentence was set for February 24, 1956. 226 Miss. 19, 84 So. 2d 528.

Thereafter on February 21, 1956, the appellant Goldsby filed in this Court a petition for a writ of error coram nobis, or, in the alternative, habeas corpus, asserting newly discovered evidence and for the first time raising the point of the systematic exclusion of Negroes from jury service. This petition was denied and thereafter certiorari was denied by the Supreme Court of the United States. 352 U. S. 944, 77 S. Ct. 266, 1 L. Ed. 2d 239. Thereafter we set a new date for the execution of the death sentence for March 23, 1956. After certain dilatory proceedings which prevented the execution of the death sentence as set for March 23, 1956, we found it necessary to fix another date for the execution on February 12, 1957. 226 Miss. 30, 91 So. 2d 750.

On January 29, 1957, the appellant Goldsby filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi

at Greenville, Mississippi. The petition was denied by the district judge as being insufficient on its face, and thereafter on February 11, 1957, the Chief Justice of the United States granted another stay of execution until the prisoner "has had an opportunity to exhaust his federal rights in this proceeding."

Thereafter further proceedings were had in the federal courts and the case was finally decided by the United States Court of Appeals, Fifth Circuit as the case of U. S. ex rel Goldsby v. Harpole, Fifth Circuit 1957, 249 F. 2d 417, and certiorari from the decision of the Fifth Circuit was denied by the United States Supreme Court. 361 U. S. 850, 80 S. Ct. 109, 4 L. Ed. 2d 89. After certain further delays for which the Supreme Court of Mississippi was in no manner responsible, the appellant Goldsby had to be tried again in one of the circuit court districts of Mississippi, and thereafter upon a change of venue to Hinds County, the case was again tried and resulted again in the imposition of the death penalty.

We affirmed the conviction on appeal from the Circuit Court of Hinds County on October 3, 1960, and set November 15, 1960 for another and new date for the execution of the death sentence. Another stay of the execution was granted by a member of the Supreme Court of the United States after this Court had denied a request for another stay of execution.

On March 27, 1961, the United States Supreme Court denied certiorari and we are now in receipt of a memorandum from the Clerk of the Supreme Court of the United States rendered during the October Term, 1960, to the effect that "The Court today denied the petition for a writ of certiorari in the above-entitled case", the case being styled Goldsby v. Mississippi, No. 671, Misc., October Term, 1960.

Upon motion of the Attorney General of the State of Mississippi for the fixing of a new date for the execution of the death sentence, we now set as the date for

the execution May 31, 1961, in the gas chamber at the State Penitentiary at Parchman, Mississippi.

The motion is sustained; and Wednesday, May 31, 1961, is hereby fixed as the date for execution of the death sentence in the manner provided by law.

All Justices concur, except *Rodgers, J.,* who took no part because he presided at the trial of the case.